383 A.2d 208

**Fannie PERILLO, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1976.

Decided Jan. 31, 1978.

Reargument Denied March 22, 1978.

John F. Miller, Jr., Luzerne County Legal Ass'n, Hazleton, for appellant.

Linda M. Gunn, Asst. Atty. Gen., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM.

The Court being equally divided, the Order of the Commonwealth Court is affirmed.

EAGEN, C. J., filed an opinion in support of affirmance in which O'BRIEN and POMEROY, JJ., joined.

ROBERTS, J., filed an opinion in support of reversal in which NIX, J., joined.

MANDERINO, J., filed an opinion in support of reversal.

JONES, former C. J., did not participate in the decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

EAGEN, Chief Justice.

Appellant Fannie Perillo here challenges a decision by the Luzerne County Board of Assistance to suspend an Aid to Families with Dependent Children (AFDC) grant for herself and two of her minor children because of the unwillingness of her husband and the children's father, Louis Perillo, with whom they were living but whose needs were not included in the grant, to sign a reimbursement agreement encumbering the family home, which he had recently inherited. This decision was affirmed by the Department of Public Welfare (DPW) after a hearing. On direct appeal a three-judge panel of the Commonwealth Court affirmed the decision of the department. *Commonwealth, Department of Public Welfare v. Perillo*, 24 Pa.Cmwlth. 321, 355 A.2d 606 (1976). We granted Mrs. Perillo's petition for allowance of appeal, and this appeal followed. I would affirm the order of the Commonwealth Court.

The facts of the case are not in dispute. On January 22, 1975, Mr. Perillo's father, with whom the family had been living, died. On February 26, 1975, Mrs. Perillo notified the board of assistance that her husband had inherited the family home from his father. She was informed that pursuant to departmental regulations her husband would have to sign Reimbursement Agreement, PA 9, encumbering the inherited property as a condition of further AFDC assistance

for herself and the children.[1]   Although Mr. Perillo at this time was unemployed, he was disabled and was receiving Supplemental Security income; consequently, his needs were not taken into account in determining the amount of the family's AFDC grant.[2]   Mrs. Perillo's caseworker explained the reimbursement agreement to her including the fact that the department was precluded from executing on the lien so long as Mr. Perillo, his wife, or his children lived in the home,[3] and asked her to have her husband sign the form. Mrs. Perillo, however, was unable to convince Mr. Perillo that signing the form would not cause the family to lose the home, and he refused to do so.[4]   As a result of his failure to sign, the board notified Mrs. Perillo that it was suspending AFDC assistance.   Testifying at her fair hearing, Mrs. Peril-

1.   "Reimbursement Agreement, PA 9, is used to acknowledge the liability of real property.   The PA 9 contains a confession of judgment which, when signed and recorded with the Prothonotary of the county in which the property is located, becomes a lien against the real property owned at the time of recording.   The lien thus obtained makes it unnecessary to obtain judgment through suit.   PA 9 provides for repayment of assistance granted to or for property owner, spouse and unemancipated minor children." DPW–Pa. Manual § 3822.21.

Section 3820 of the manual defines "reimbursement" as "the repayment of assistance granted to a person or certain of his relatives while he has ownership or the right to ownership of property." Section 3235 provides that "a spouse, or the natural or adoptive parent(s) of an unemancipated minor child must, as a condition of eligibility for his dependents living with him, utilize and liquidate his real property to the same extent as would be required if the spouse or parent were himself receiving assistance."   A PA–9 lien covers assistance up to the amount of $2,000.   A new form would be required for assistance in a greater amount.

2.   See 42 U.S.C.A. § 606(b).

3.   Departmental regulation 3235 provides in pertinent part:
"The Department will not itself at any time force the sale of, or execute on the judgment lien against, any real estate to effect reimbursement so long as the property is used as a home by the owner, his spouse, or his child.   Such property need not be offered for sale as a condition of continued eligibility."   DPW–Pa. Manual § 3235.

4.   The caseworker testified that she did not speak to Mr. Perillo directly about this because she had previously had difficulties in dealing with him.

lo indicated that she herself was willing to encumber her dower interest in the property.

Appellant argues that the DPW regulations pursuant to which AFDC assistance was suspended are in violation of both the Pennsylvania Welfare Code and the federal Social Security Act.[5] She further argues that since under the regulations if she and the children had not been living with her husband when he inherited the property or if they had subsequently left him, assistance would not have been suspended because of his refusal to sign the reimbursement agreement,[6] to suspend assistance in her circumstances violated her constitutional right to equal protection of the law.[7]

Initially, I observe that the DPW policy of requiring parents who *themselves* seek or receive AFDC assistance to encumber their real property by signing a PA–9 reimbursement agreement as a condition of AFDC eligibility for themselves and their children has already been upheld in the federal courts in the face of statutory, equal-protection, and due-process challenges. *Charleston v. Wohlgemuth*, 332 F.Supp. 1175 (E.D.Pa.1971), aff'd, 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972). See also *Snell v. Wyman*, 281 F.Supp. 853 (D.N.Y.1968), aff'd, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d

5. The AFDC program is jointly financed by the federal government and the participating states. A state's eligibility provisions will be invalidated if they are found to be in substantial conflict with the Social Security Act or the federal regulations promulgated under it. See *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

6. "A liable property owner not living with his spouse or unemancipated minor child should sign an acknowledgement of his liability for the reimbursement of the assistance granted them. The County office obtains the signatures of property owners located in the same county. If an acknowledgement is refused or if the property owner is not located in the same county as the applicant, the Area Office takes the action necessary to obtain an acknowledgement, including legal action if necessary. *The property owner's failure to sign voluntarily does not affect the eligibility of his relatives.*" (Emphasis added.) DPW–Pa. Manual § 3822.12.

7. Appellant also argues that she was thereby deprived of substantive due process, but the cases she cites in support of this view were decided on statutory or equal-protection grounds.

511 (1969), upholding a comparable policy of the State of New York. Instantly, appellant is challenging the DPW policy of rendering a mother and her minor children ineligible for AFDC assistance because of the refusal of a non-applicant, non-recipient husband and father, with whom they were living, to sign a PA–9 form, while providing that a refusal to sign by a husband and father not living with his dependents will not affect their eligibility.

In the Public Welfare Code the General Assembly has delegated broad authority to DPW to promulgate regulations governing eligibility for public assistance:

> "The department shall establish rules, regulations and standards, *consistent with the law*, as to eligibility for assistance and as to its nature and extent." (Emphasis added.)

Act of June 13, 1967, P.L. 31, no. 21, art. 4, § 403, *as amended* by Act of July 9, 1976, P.L. 993, no. 202, § 2(b), 62 P.S. § 403(b) (Supp.1977–78).[8] It must be determined, therefore, whether or not the regulations challenged instantly are consistent with the law.

Section 403 itself makes reference only to the possibility of a *recipient* of public assistance being required to encumber his property in favor of the Commonwealth as a "prerequisite to receiving assistance." Section 4(a) of the Support Law, however, provides with an exception not here pertinent that

> " . . . the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, *and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred,* or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public

8. The same language was contained in the original version of section 403 in effect at the time appellant's assistance was suspended.

agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children." (Emphasis added.)

Act of June 24, 1937, P.L. 2045, § 4(a), *as amended*, 62 P.S. § 1974(a). The law thus clearly establishes the liability of Mr. Perillo's property to DPW for any assistance given his spouse and minor children after he inherited it and while he retains it. Appellant argues, however, that since DPW is thereby given a statutory right to bring suit to protect its interest in the property, the department may not deprive his wife and children of assistance because of his refusal to encumber his property voluntarily.

Clearly the mere availability of suit to protect its interest does not prevent DPW from rendering otherwise eligible dependent children ineligible because of a refusal of a recipient parent to sign a PA–9 form.[9] See *Charleston v. Wohlgemuth*, supra. In my view, the instant situation does not differ materially merely because the needs of Mr. Perillo, who had other income available to him, were not taken into consideration in determining the amount of the family's AFDC grant. See 42 U.S.C.A. § 602(a)(7). As a member of the family unit to which assistance was being paid, he plainly shared in the benefits of that assistance to his dependents, just as his wife and children shared with him

---

**9.** The DPW regulations indicate that the Commonwealth's interests are best protected by requiring that liable property be pledged as security for reimbursement, since this procedure avoids the added expense of a law suit and best assures equality of treatment. DPW–Pa. Manual §§ 3236, 3821. Nevertheless, due process is not thereby violated in any proceeding to enforce a PA–9 lien, "the Commonwealth carries the burden of establishing the actual amount of assistance paid by it to the recipient, and of overcoming any defense interposed . . . ." *Charleston v. Wohlgemuth*, supra, 332 F.Supp. at 1186.

the property he was required to encumber as a condition of further assistance. To treat differently *his* refusal to execute a PA–9 form merely because his needs were not taken into consideration in determining the amount of the family's assistance would be to exalt form over substance.[10]

■ Appellant argues that DPW's policy is contrary to the legislative intent of the Public Welfare Code "that assistance shall be administered promptly and humanely with due regard for the preservation of family life" (62 P.S. § 401), in that the policy forces appellant and her children to leave her husband in order to remain eligible for assistance. I cannot, however, accept appellant's drastic characterization of the situation confronting her. The record indicates that Mr. Perillo's refusal to execute the form was due to his mistaken belief that to do so would cause his children to lose the home. Apparently, therefore, a lack of effective communication rather than DPW's policy was responsible for appellant's problem. Since section 401 also provides that "assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society," I cannot conclude that the policy challenged instantly, which merely requires a member of a family unit to recognize and acknowledge his liability for the public assistance to be provided to his dependents with whom he is living as a condition of that assistance, while it enables him or his family to keep the property so long as it remains his or his family's home, lacks "due regard for the preservation of family life."

■ Similarly, appellant argues DPW's regulations violate section 401 of the Social Security Act, 42 U.S.C.A. § 601, which states that one of the purposes of the AFDC program is "to help maintain and strengthen family life." I cannot say, however, the challenged regulations, which require a recognition of the interdependency of the family unit when

10. Obviously Mrs. Perillo's right to AFDC assistance, suspended because of Mr. Perillo's failure to sign the reimbursement agreement, is no greater than that of her children upon whose needs such assistance is premised. See 42 U.S.C.A. § 606(b).

its members are living together, are in such conflict with the Social Security Act as to require invalidation on that ground.[11] See *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

■ Appellant also argues the regulations in question violate her right to equal protection in that they establish without a rational basis two classes of needy and dependent persons with non-recipient spouses or parents who fail to sign the PA–9 form and discriminate against her class in denying assistance merely because its members reside with the recalcitrant relative. I do not agree.

The Supreme Court of the United States has enunciated the standards to be applied in assessing an equal-protection claim in the context of social welfare:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because

11. On January 4, 1975, Congress amended the Social Security Act, effective August 1, 1975, to require AFDC recipients to cooperate with the state agency in establishing the paternity of dependent children and obtaining support for them from responsible adults, but also specifically to provide that in the event of non-cooperation, only the needs of the non-cooperating person may be eliminated from the AFDC grant. 42 U.S.C.A. § 602(a)(26)(A), (B) (Supp.1977); 42 U.S. C.A. § 606(f) (Supp.1977). See also 45 C.F.R. § 232.11(a)(2), (3) (1976); 45 C.F.R. § 232.12(d), (e) (1976); 45 C.F.R. § 233.-90(b)(4)(i)(ii) (1976). Appellant, however, does not argue, and I am not otherwise persuaded, that the policy reflected in these amendments, directed toward a specific area of consistent Congressional concern, is applicable to well-established and well-recognized state administrative policies with regard to the encumbrance of real property as a condition of assistance, thus rendering the regulations challenged instantly contrary to the Act. Compare *Charleston v. Wohlgemuth*, supra, and *Snell v. Wyman*, supra, with, e. g., *Shirley v. Lavine*, 365 F.Supp. 818 (D.N.Y.1973); aff'd sub nom. *Lascaris v. Shirley*, 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975); *Taylor v. Martin*, 330 F.Supp. 85 (D.Cal.1971), aff'd sub nom. *Carlson v. Taylor*, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); *Woods v. Miller*, 318 F.Supp. 510 (D.Pa.1970); *Doe v. Shapiro*, 302 F.Supp. 761 (D.Conn.1969), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970). See also *Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). Compare *Fritsch v. Wohlgemuth*, Pa., 378 A.2d 849 (1977), with *Woolfolk v. Brown*, 538 F.2d 598 (4th Cir. 1976).

the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Thus, "it is enough that the State's action be rationally based and free from invidious discrimination." *Id.,* 397 U.S. at 487, 90 S.Ct. at 1162. See also *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Clearly DPW's purpose of minimizing the necessity of expending its limited funds in establishing admittedly valid claims against the property of welfare recipients and their legally responsible relatives in order to conserve these funds for the needy is a legitimate one.[12] This being so, I conclude that the department's decision to distinguish between dependents who reside with the property owner and those who do not is rationally based and free of invidious discrimination. As indicated previously, the families in appellant's class are in fact a social and economic unit; the property-owning husband and father living with his dependents, even if he is not more intimately involved in helping to fulfill their needs, can far less readily escape or avoid the financial and emotional consequences of his failure to acknowledge his responsibility for them. The absent husband and father, on the other hand, even if his whereabouts are known and he is easily accessible, is by the very fact of his physical and psychological separation from the family unit less likely to be involved with or affected by its needs. Thus, as DPW suggests in its brief, while efforts are made to obtain his

12. In *Charleston v. Wohlgemuth,* supra, DPW's practice of requiring property owners to sign PA–9 forms as a condition of eligibility for themselves and their children was upheld as "a rational instrument of state policy." 332 F.Supp. at 1184. It was also there held that needy and dependent children denied assistance because of their parents' refusal to sign "cannot qualify as a separate class, unconstitutionally discriminated against in violation of the equal protection clause." *Id.* at 1185.

signature on a PA–9 form, it is considered unfair to condition his dependents' eligibility for assistance on the cooperation of an absent husband and father.[13]   I therefore find that the difference in treatment between the two classes is based upon a rational and meaningful distinction between their respective situations consistent with the purposes of the AFDC program; thus, the distinction is not an invidious discrimination depriving appellant of equal protection.

Accordingly, the order of the Commonwealth Court should be affirmed.

O'BRIEN and POMEROY, JJ., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

The Opinion in Support of Affirmance concludes that the regulation of the Pennsylvania Department of Public Welfare (DPW) conditioning eligibility for Aid to Families with Dependent Children (AFDC) benefits upon the cooperation of a responsible relative, not participating in the grant, in signing a confession of judgment (Reimbursement Agreement PA–9) is valid under the Pennsylvania Welfare Code as well as the federal Social Security Act and fourteenth amendment to the Constitution.   I dissent.   This regulation is here used to deny aid to Mrs. Perillo, a cooperating eligible parent, and eligible Perillo children solely because of the noncooperation of Mr. Perillo, a non-recipient of AFDC benefits.   Such a basis for denial of these important benefits is not proper under the Social Security Act (Act) and therefore void under the Supremacy Clause.

### I.

All state regulations pertaining to coverage and eligibility for AFDC benefits must conform with the policies and

13.  See n. 6, supra.  I need not and do not here determine whether a policy rendering dependents ineligible for assistance because of the failure of a liable property owner not living with them to sign a PA–9 form would violate the statutes governing the AFDC program.

provisions of the Social Security Act and the regulations promulgated thereunder by the Secretary of Health, Education and Welfare. See 42 U.S.C.A. § 602 (1974 and Supp. 1977); 45 C.F.R. § 233.10 (1976). "[O]nce the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional." *Burns v. Alcala,* 420 U.S. 575, 580, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975). Accord, *Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Lascaris v. Shirley,* 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975); *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1973); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Because federal standards control eligibility for AFDC, various state regulations adding eligibility requirements not found in the Social Security Act, or excluding from coverage individuals meeting federal eligibility standards, have been struck down under the Supremacy Clause. E. g., *Philbrook v. Glodgett* (excluding fathers eligible for, but not actually receiving, unemployment compensation); *Lascaris v. Shirley* (condition requiring parent to cooperate with state in paternity and support actions against absent parent); *Carleson v. Remillard* (excluding "military orphans"); *Townsend v. Swank* (excluding 18–20 year olds attending college); *King v. Smith* (defining "parent" to impose condition that mother not cohabit with an unrelated adult male).

Several states have promulgated regulations conditioning eligibility for AFDC benefits upon the cooperation of recipient mothers in establishing the paternity of absent fathers and seeking support from them. Although the Act requires states to take affirmative action to ascertain the paternity of dependent children and seek support payments, these state regulations were uniformly struck down as engrafting an additional eligibility requirement inconsistent with the Act. *Lascaris v. Shirley,* supra; *Doe v. Flowers,* 364 F.Supp.

953 (D.C.W.Va.1973), aff'd, 416 U.S. 922, 94 S.Ct. 1921 (1974); *Doe v. Lavine,* 347 F.Supp. 357 (S.D.N.Y.1972); *Saiz v. Hernandez,* 340 F.Supp. 165 (D.C.N.M.1972); *Doe v. Swank,* 332 F.Supp. 61 (D.C.Ill.1971), aff'd sub nom., *Weaver v. Doe,* 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); *Taylor v. Martin,* 330 F.Supp. 85 (N.D.Cal.1971), aff'd sub nom., *Carlson v. Taylor,* 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); *Meyers v. Juras,* 327 F.Supp. 759 (D.Or. 1971), aff'd, 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39 (1971); *Doe v. Shapiro,* 302 F.Supp. 761 (D.C.Conn.1969), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970). The rationale of these cases is that

"Under the Social Security Act, a child is eligible for and entitled to AFDC assistance if he is both 'needy' and 'dependent'. . . . These are the only two eligibility requirements which Congress has imposed . . . ."

*Doe v. Shapiro,* 302 F.Supp. at 764.

These cases are apposite to the present situation. The confession of judgment in the PA–9 form, like an adjudication of paternity, "establishes only that there is a legal duty to support; it does not necessarily establish that support will be forthcoming from the . . . legally liable father. Since the child would still remain eligible for AFDC assistance if the legally liable father refused or was unable to provide support, we must conclude that the name of the father [required from the mother as a condition of eligibility under the state regulations] is absolutely irrelevant to the question of AFDC eligibility." Id. After extensively reviewing the legislative history of the Social Security Act and relevant H.E.W. regulations, the court in *Doe v. Shapiro* concluded that:

"While Congress has said that state plans must make provision for establishing paternity and obtaining support from absent fathers, it simply does not follow from this that Congress intended to leave the needy child without any means of subsistence if the mother was unwilling to name the father. Indeed, if Congress had intended so

drastic a result, there is good reason to suppose that it would have made its intent more explicit."

302 F.Supp. at 765.

The Opinion in Support of Affirmance relies on *Charleston v. Wohlgemuth,* 332 F.Supp. 1175 (E.D.Pa.1971), aff'd, 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972), where the court upheld Pennsylvania's requirement that a recipient adult sign PA–9 as a condition of eligibility for AFDC. The opinion extends the rationale of *Wohlgemuth* to this case, where the requirement to sign PA–9 is imposed upon a non-recipient adult, reasoning that the non-recipient shares indirectly in the benefits paid to other family members and therefore, in substance, is situated similarly to the recipient adult.

The rationale of *Wohlgemuth* will not support such an extension. Nothing in that case requires that aid be denied a needy mother and children who have done everything statutorily required of them to receive such aid. The distinction between such persons and the potential recipients of aid in *Wohlgemuth,* who refused to meet the statutory conditions for aid, should be obvious.

Further, many of the decisions discussed above cast doubt upon the continued validity of *Wohlgemuth.* These cases recognize that noncooperation of a non-recipient adult was not intended by Congress to be a valid reason for denying benefits to otherwise eligible children and adults.*

---

* It is pertinent to note that the plaintiffs in *Snell v. Wyman,* 281 F.Supp. 853 (S.D.N.Y.1968), upon which the *Wohlgemuth* court and the Opinion in Support of Affirmance relies, challenged only the propriety, under the Social Security Act, of seeking reimbursement from the types of property encumbered, and not whether a parent's refusal to sign a lien form was a proper ground for eliminating a family from the grant. Although *Wohlgemuth* specifically held the requirement of signing the form was not invalid, the court appeared to assume that this result followed from its determination, following *Snell,* that the state could legitimately seek reimbursement from the property encumbered. I do not agree. This condition imposes a significant additional eligibility requirement not contemplated by the Social Security Act.

## II.

Additionally, the 1975 amendments to the Social Security Act, and subsequent H.E.W. regulations, reflect a clear policy that the eligibility of children or cooperating adults is not to be affected by the conduct of a noncooperating adult.

On January 4, 1975, Congress passed Pub.L. 93–647, 88 Stat. 2359, amending § 402 of the Social Security Act, 42 U.S.C.A. § 602, to require recipients of AFDC to assign all support rights to the state agency and to cooperate with the state agency in establishing paternity and obtaining support from responsible adults. 42 U.S.C.A. § 602(a)(26)(A), (B) (Supp.1977). The amendment provides, however, that "if the relative with whom a child is living is found to be ineligible because of failure to comply . . . , any aid for which such child is eligible will be provided in the form of protective payments . . . ." Id. Section 406 of the Act was also amended to add subsection (f) which provides:

"Notwithstanding the provisions of subsection (b) of this section, the term 'aid to families with dependent children' does not mean payments with respect to a parent (or other individual whose needs such State determines should be considered in determining the need of the child or relative claiming aid under the plan of such State approved under this part) of a child who fails to cooperate with any agency or official of the State in obtaining such support payments for such child. *Nothing in this subsection shall be construed to make an otherwise eligible child ineligible for protective payments because of the failure of such parent (or such other individual) to so cooperate.*"

42 U.S.C.A. § 606(f) (Supp.1977) (emphasis added). H.E.W. regulations now provide that the sole federal sanction for a parent who refuses to cooperate with the state agency in seeking reimbursement from a responsible relative is to eliminate the needs of the uncooperating parent from the determination of the grant and provide for protective payments to otherwise eligible members of the grant to ensure that only their needs are met from the grant. See 45 C.F.R. § 232.11(a)(2), (3) (1976) (cooperation in assigning support

rights); 45 C.F.R. § 232.12(d), (e) (1976) (cooperation in obtaining support); 45 C.F.R. § 233.90(b)(4)(i), (ii) (1976) (may not deny aid to otherwise eligible child based on noncooperation of parent or other caretaker relative in establishing paternity or obtaining support).

The same federal policy appears in the requirement in the Social Security Act that certain parents and children receiving AFDC benefits participate in work incentive programs (WIN). The refusal of a parent or child to participate in a WIN program without good cause results in elimination of that parent's or child's needs from the grant; the benefits of otherwise eligible children or adults are not affected. See 42 U.S.C.A. § 602(a)(19)(F) (Supp.1977); 45 C.F.R. § 242.-21(b) (1976) ("The needs of any individual who fails to register [for WIN] shall not be taken into account in determining the need of the family and the amount of assistance, and assistance will be furnished to the eligible members of the family."); 45 C.F.R. § 224.51(a) (1976). We have recently held that state regulations disqualifying the entire family due to a parent's refusal to participate in a WIN program violated the Act. *Fritsch v. Wohlgemuth,* 474 Pa. 391, 378 A.2d 849 (1977).

### III.

The decisions striking down state regulations requiring parental cooperation in seeking support payments as a condition of eligibility for AFDC and the subsequent changes in the Social Security Act and H.E.W. regulations establish a clear federal policy that otherwise needy children and adults cannot be denied benefits because of a responsible adult's refusal to cooperate with the state agency on reimbursement matters. The only federally sanctioned recourse in such circumstance is to delete the needs of the noncooperating individual from the grant and, when appropriate, provide for protective payments to ensure that the noncooperating individual does not participate in the grant.

PA–9 does not relate to the determination of eligibility itself. Rather, its only purpose is to require cooperation

with DPW to assist the department in obtaining reimbursement for benefits extended. The clear policy under the Social Security Act and H.E.W. regulations is that the refusal of a parent or caretaker adult to cooperate with the agency in relation to reimbursement efforts shall not affect the eligibility of dependent children and cooperating parents or caretaker adults.

Here, the needs of the uncooperating parent, Mr. Perillo, have already been excluded in determining the benefits available to the Perillo family. Since the Social Security Act allows no further sanction, the Pennsylvania regulations denying AFDC benefits to the entire Perillo family because of Mr. Perillo's refusal to sign the PA-9 form is contrary to the Social Security Act and therefore void under the Supremacy Clause. I therefore dissent and would reverse the order of the Commonwealth Court.

NIX, J., joins in this Opinion in Support of Reversal.

### OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

Section 4(a) of the Support Law provides that

" . . . the real and personal property of *any person* shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred . . . ." (Emphasis added.)

Act of June 24, 1937, P.L. 2045 § 4(a), as amended, 62 P.S. § 1974(a).

The Act thus clearly establishes the liability of "any" spouse for the maintenance, assistance and burial of those in his or her family. It does not establish liability only for those spouses living with their dependents. Department of Public Welfare regulations, however, require that as a condition of eligibility for one's dependents a property owner must en-

cumber his or her property *only if he or she lives with the family unit.* Appellant argues that this regulation violates her right to equal protection because it establishes without a rational basis two classes of needy and dependent persons: one class consisting of those dependents who have property owning spouses residing with them, and another class consisting of dependents having property-owning spouses who do not reside with them. The opinion in support of affirmance concludes that such a classification is "reasonable" and therefore does not offend the constitution because of DPW's need to minimize the expenditure of funds to establish "admittedly valid claims against the property of welfare recipients and their legally responsive relatives."

Although DPW's purpose of minimizing legal expenses may be a legitimate one, it has no bearing on the reasonableness or unreasonableness of the classification at issue here.

In support of its conclusion, the opinion in support of affirmance indicates that families in appellant's class are a social and economic unit and that the property owning husband and father, living with his dependents, is therefore more intimately involved in fulfilling the family's needs, and can far less readily escape or avoid the financial consequences of his failure to acknowledge responsibility for his dependents. The absent spouse, on the other hand, is less likely, according to the opinion in support of affirmance, to be involved with or affected by the needs of his dependents because of his physical and psychological separation from the family unit. Thus, according to the Department of Public Welfare and the opinion in support of affirmance, it would be unfair to condition eligibility of dependents of an absent spouse upon the cooperation of that absent spouse. Withholding eligibility, however, is not the only means by which the Department of Public Welfare could enforce the statute. As acknowledged by the opinion in support of affirmance, the statute gives DPW the authority to sue for monies received from it by a recipient property owner. Such a remedy is apparently considered adequate by DPW when dealing with absent property-owning spouses. If such

a remedy is adequate for absent property-owning spouses, it is also adequate for those property owning spouses living with their dependents.

The statute gives the Department of Public Welfare the right to sue, obtain judgment, and execute against a recipient's real estate (after the recipient has vacated the property) as in any other legal action seeking a money judgment against real estate. The Department of Public Welfare should not be allowed to use its position of economic supremacy to extract confessions of judgment from the property owning spouses of those eligible for assistance. The opinion in support of affirmance penalizes one citizen because of another citizen's refusal to encumber his real estate. Penalizing one citizen for the nonperformance of an act which that citizen does not have the ability to perform is no different than punishing one citizen for the crime of another. Such an approach is contrary to our sense of fair play and is a violation of due process.