436 A.2d 593

**Obie SNIDER, Fred L. Hoffman and Barbara V. Barker, Appellants,**

v.

**Richard THORNBURGH, Governor of the Commonwealth of Pennsylvania, et al.**

Supreme Court of Pennsylvania.

Argued May 22, 1980.

Decided Sept. 29, 1981.

Michael I. Levin, Harrisburg, for appellants.

John B. Koontz, Bedford, for appellee Bedford Co. Bd. of Elec.

Gordon Stoup, Bedford, pro se.

Robert Meehan, Leonora M. Smith, Chief Counsel, Timothy J. Holland, Harrisburg, for appellee Auditor General.

Harry C. Elseeser, Jr., Lewis P. Sterling, York, for appellee York Co. Bd. Elections.

David Grine, pro se.

John W. Blasko, Bellefonte, for appellee Centre Co. Bd. Elections.

John C. Uhler, York, pro se.

Robert Hoffman, Harrisburg, for appellee Com. Officials except Atty. Gen.

Bruce A. Rosenfield, Philadelphia, for amicus curiae.

Carol F. Graebner, Edwin L. Klett, Pittsburgh, for Allegheny County Bar—amicus curiae.

Before EAGEN, C. J., O'BRIEN, ROBERTS, NIX, LARSEN and KAUFFMAN, JJ.

## OPINION OF THE COURT

PER CURIAM:

### I.

Mr. Chief Justice O'Brien files an opinion modifying the determination of the Commonwealth Court to the extent that the Commonwealth Court held that 65 P.S. § 402 did not violate the Equal Protection Clause in excluding ap-

pointed, non-compensated officials from the definition of "Public Official." Mr. Justice Larsen, Mr. Justice Flaherty and Mr. Justice Kauffman join in this portion of the opinion.

Mr. Justice Roberts files an opinion which dissents from the above portion of the opinion of Mr. Chief Justice O'Brien, as well as the portion of that opinion announcing the remedy.

Mr. Justice Nix files an opinion which dissents from the above portion of the opinion of Mr. Chief Justice O'Brien.

## II.

The Court being equally divided on whether to reach the due process issue concerning financial disclosure by the family members of a Public Official or a candidate for public office, the remaining portions of the order of the Commonwealth Court are affirmed.

Mr. Chief Justice O'Brien files an opinion supporting affirmance on the issue of financial disclosure by family members which Mr. Justice Nix and Mr. Justice Kauffman join.

Mr. Justice Roberts files an opinion supporting reversal on the issue of financial disclosure by family members which Mr. Justice Larsen and Mr. Justice Flaherty join.

Mr. Justice Flaherty files an opinion supporting reversal on the issue of financial disclosure by family members.

## III.

Accordingly, the determination of the Commonwealth Court is modified to the extent it held the statute is not violative of the Equal Protection Clause, and the exclusion of appointed, non-compensated officials from the definition of "public officials" is removed. In all other respects, the determination of the Commonwealth Court is affirmed and the Order of the Commonwealth Court sustaining appellees' preliminary objections and dismissing appellants' Amended Petition for Review is affirmed.

EAGEN, former C. J., did not participate in the decision of this case.

## OPINION

O'BRIEN, Chief Justice.

This is an appeal from an order entered in the Commonwealth Court sustaining appellees' preliminary objections and dismissing appellants' Amended Petition for Review. The facts germane to the matters before us now are as follows:

The Act of the Legislature popularly known as the "Public Officials Ethics Law"[1] was signed by the Governor on October 4, 1978, to become effective January 1, 1980. The Act, generally, proscribes certain conduct involving conflicts of interest on the part of public officials, and, accordingly, requires that candidates for public office, elected officials and certain appointed officials file financial disclosure statements with a State Ethics Commission. The Commission is created by the Legislature in the Act to implement and administer its provisions.

Subsequent to certain preliminary proceedings not relevant here, appellants, on February 21, 1979, filed an Amended Petition for Review invoking the original jurisdiction of Commonwealth Court. Appellants are elected school directors in three school districts in the Commonwealth, and by their Petition sought relief for themselves individually and for all members of a class to which they belong: elected school directors. Named as respondents were the Governor, the Treasurer, the Auditor General and the Attorney General of the Commonwealth, the State Ethics Commission and its members individually, and the county boards of elections and district attorneys as a class. By their petition appellants alleged the Act is violative of the Constitutions of the Commonwealth and of the United States and sought relief in three counts: declaratory relief, injunctive relief; and, in a count in *quo warranto*, the ouster from office of certain members of the Ethics Commission.

1. Act of October 4, 1978, P.L. 883, as amended, 65 P.S. § 401, et seq. (Supp. 1980–1981).

Respondents below, appellees herein, filed preliminary objections to the Amended Petition for Review in the form of a petition raising a question of jurisdiction, a demurrer and a motion to strike for lack of conformity to a rule of court. Following a hearing on appellees' preliminary objections an order was entered, on August 31, 1979, sustaining the preliminary objections and dismissing appellants' petition.

Hence this appeal.

## I. *The Equal Protection Claim*

Appellants claim initially that the Act is violative of the Equal Protection Clause of the United States Constitution. Appellants argue an unconstitutional effect is worked by a definitional item in section two of the Act. The statute provides that a "public official" may not take the oath of office or perform any of his official duties until he has filed a "statement of financial interests." The disclosure requirement thus established must be fulfilled by all candidates for elective office as well as by appointed officials who receive compensation for the performance of their duties.

But the Act further provides that " 'public official' shall not include any appointed official who receives no compensation other than reimbursement for actual expenses." 65 P.S. § 402. Appellants claim that by this definitional distinction the Legislature has created a constitutionally impermissible classification. The dichotomy perceived and complained of by appellants, is as follows: Alone among the political subdivisions of this Commonwealth, the City of Philadelphia is authorized to,[2] and has chosen to,[3] appoint rather than elect its school directors. Additionally, vacant, unexpired elective school board positions throughout the Commonwealth are filled, pursuant to the Public School Code, by appointment.[4]

2. 53 P.S. § 13218(a)(3).

3. 351 Pa.Code § 12–201.

4. 24 P.S. § 3–315, et seq.

Since all school board members in Pennsylvania serve without compensation,[5] the classification created by the terms of the Act becomes apparent. On the one hand are all the elected school directors in Pennsylvania, to whom the disclosure provisions of the Act apply. And on the other are the school directors of Philadelphia and a certain number of temporarily appointed school directors elsewhere, all of whom are exempt from the strictures of the Act.

The issue for our resolution is whether the classification so drawn violates the constitutional guarantee of equal protection of the laws.

The parties urge upon us distinct standards of review, and we preliminarily address that question. Appellees advocate utilization of a standard we recently invoked in *Springfield School District v. Department of Education*, 483 Pa. 539, 397 A.2d 1154 (1979). Therein, relying upon the opinion of the Supreme Court in *United States v. Maryland Savings Share Insurance Corporation*, 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970), we stated that "legislative classification will not fail under an equal protection analysis 'if any state of facts rationally justifying it is demonstrated to or perceived by the courts.'" *Springfield School District, supra*, 483 Pa. at 568, 397 A.2d 1154. We thus concluded, again relying upon the Supreme Court, *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969), that "the equal protection clause will set aside statutory classifications 'only if no grounds can be conceived to justify them.'" *Springfield School District, supra*, 483 Pa. at 568, 397 A.2d 1154 (emphasis in original).

Appellants, on the other hand, propound a different test, and direct our attention to *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441 (1971). In *Moyer*, we held:

"The Equal Protection Clause . . . does not deny the state the power to treat different classes of persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of *criteria whol-*

5. 24 P.S. § 3–321.

*ly unrelated to the objective of the particular statute.* The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having *a fair and substantial relation to the object of the legislation* so that all persons similarly circumstanced will be treated alike." *Id.,* 462 Pa. at 400–401, 341 A.2d 441 (emphasis supplied).

Again, in *Commonwealth v. Butler,* 458 Pa. 289, 328 A.2d 851 (1974), we stated that "if a legislative classification bears no reasonable relationship to the purposes of the legislation, the equal protection clause is violated." *Id.,* 458 Pa. 301, 328 A.2d 851.

That the parties before us argue opposing standards of review is not surprising; our prior decisions frequently appear to be inconsistent. On the one hand are cases which speak of a "rational basis" test, *see, e. g., Springfield School District, supra; Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975), and on the other are those which require a "fair and substantial relation" between the classification and the legislative objective, *see, e. g., Moyer v. Phillips, supra; In re Estate of Cavill,* 459 Pa. 411, 329 A.2d 503 (1974).

Both lines of cases, notwithstanding their seeming disparity, spring from a common source. This common source is manifested in what is perhaps the most fundamental principle of statutory construction: the presumption that the legislature has acted constitutionally. This presumption "reflects on the part of the judiciary the respect due to the legislature as a co-equal branch of government." *School District of Deer Lakes v. Kane,* 463 Pa. 554, 562, 345 A.2d 658, 662 (1975). Accordingly, courts properly defer to the legislature in the exercise of its function and may refuse to enforce a statute only if it "*clearly, palpably,* and *plainly* violates the constitution." *Tosto v. Pennsylvania Nursing Home Loan Agency, supra.*

The presumption of constitutionality and the concomitant judicial deference to the legislature applies where the enact-

ment in question is challenged on equal protection grounds or otherwise. But in the absence of a claim that the classification is "suspect," or that the statute implicates "fundamental rights," there is no requirement, or, indeed, justification, for utilizing different standards of review in different cases.[6]

That our prior decisions apparently apply different tests may perhaps be traced to language contained in *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920), and often quoted by this Court:

> "[T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Id.* at 415, 40 S.Ct. at 561–562.

The *Royster* court, however, clearly intended that its language constitute a single test: in order to be nonarbitrary, that is to have a reasonable basis, the classification must be based upon a difference having a fair and substantial relation to the legislative objective. That the "reasonable basis", or "rational basis", for a classification must be a function of the relationship between the classification and the purpose of the legislation, has been recognized by this Court. See, for example, *Commonwealth v. Staub*, 461 Pa. 486, 337 A.2d 258 (1975), where the terms are used interchangeably. *Accord, Danson v. Casey*, 484 Pa. 415, 399 A.2d 360 (1979); *Moyer v. Phillips, supra; In re Estate of Cavill, supra; Roberts v. School District of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975).

■ We conclude, then, that the mistaken assumption that the phrase "rational basis" implies a greater assumption of constitutionality or connotes a less strict standard of review than the phrase "fair and substantial relation", should be discarded. Accordingly, we proceed to analyze the classifi-

6. See, *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Baltimore & Ohio Railroad Co. v. Commonwealth, Department of Labor and Industry*, 461 Pa. 68, 83, n.11, 334 A.2d 636, 643 (1975).

cation at issue here to determine whether it is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation.

The object of the legislation in the instant case is clear; the Legislature has plainly declared its intention in enacting the Ethics Law:

"The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the State in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this Act shall be liberally construed to promote complete disclosure." 65 P.S. § 401.

■ Applying our standard of review we juxtapose the declaration of legislative intent alongside the classification created by the definition of "public official" in § 402 and seek to determine if the latter bears a "fair and substantial relation" to the former. In our view the question so framed answers itself. Those persons appointed to fill vacant, unexpired terms of elected school directors perform functions identical in every respect to those individuals elected to their offices. To exclude persons so appointed from the provisions of the Act while including the elected members of the same board of school directors bears no relation, substantial or not, to the object of the legislation.

On the other hand, it is true that the appointed school directors of Philadelphia are situated somewhat differently from all other school directors in the Commonwealth. The Philadelphia School Board does not have direct power to levy local taxes. *Danson v. Casey, supra.* Rather, Philadelphia school directors must account to City Council each year with

"a lump sum statement of anticipated receipts and expenditures for the next fiscal year and a request for authority to levy taxes to balance its budget for the year." Philadelphia Home Rule Charter, 351 Pa.Code § 12.12–303(b). Nevertheless, the school directors of Philadelphia are by no means powerless. They are, for example, authorized to incur indebtedness; hire, promote, demote and remove employees; enter into contracts; purchase supplies, equipment and property. 351 Pa.Code § 12.12–300 et seq.

Thus while it is true there is some distinction between Philadelphia's appointed school directors and elected school directors elsewhere, more is required. The classification which treats them differently must bear a fair and substantial relation to the object of the legislation. It should be clear the Legislature did not intend that the act be limited to officials empowered to levy taxes; many officials without that power are included in the scope of the statute. Moreover, the objective to which the statute is directed, that is, the maintenance of public confidence in its officials, is at least as pertinent to those officials who spend the public revenue as to those who generate it.

We cannot believe that the Legislature's declared intention to "strengthen the faith and confidence of the people of the State in their government" was, under any conceivable analysis, intended to stop, at least in relation to school directors, at the boundaries of Philadelphia. Accordingly, we hold that the definitional provision of § 2 of the Act, which operates to exempt from its coverage appointed school directors, works an unconstitutional effect in violating the right of those persons not exempted to the equal protection of the laws.

II. *The Privacy Challenge*

Sections four and five of the Act require that each elected school director publicly disclose information concerning his or her financial affairs, and to some extent the financial affairs of his or her family. Appellants claim that these disclosure requirements violate their individual rights of privacy.

Unable to identify the constitutional or statutory source of the privacy right which they assert, appellants rely upon a variety of cases decided in the Federal courts and in other state jurisdictions. It should be sufficient to observe that none of the cases relied upon controls the instant matter.

It is of course true that the Supreme Court has determined citizens enjoy a constitutionally protected right of privacy. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972), relied upon by appellants, is typical of a line of cases delineating the most readily discernible protected privacy interest. "This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation and child rearing." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). No privacy interest of the quality discerned in *Wade* or *Paris Adult Theatre I*, has been asserted by these appellants.

*Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), also relied upon by appellants, is, while somewhat closer to the mark, also not controlling. In *Buckley*, the Court upheld the financial disclosure provisions of the Federal Election Campaign Act of 1971 in the face of a claim that the Act violated the first amendment "right of associational privacy." The First Amendment challenge made in *Buckley* is totally dissimilar to that made in the instant case.

Neither *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), (patient-identification requirements in the New York State Controlled Substances Act of 1972 do not violate a constitutionally protected "zone of privacy"), nor *California Bankers Association v. Schultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (reporting provisions of the Bank Secrecy Act of 1970 do not violate Fourth Amendment rights of banks or depositors), nor *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (Presidential Recordings and Materials Preservation Act not violative of appellant Nixon's "legitimate expectation of privacy in his personal communications"), all of which are relied upon by appellants, is supportive of their

peculiar privacy claim. The utility of these cases, for appellants' purposes, is limited to buttressing their assertion that privacy represents an actionable right.

But we have long recognized the existence, founded in the Federal Constitution and the Constitution of Pennsylvania, of a right to privacy. That is not to say, however, that the right so claimed must prevail against all governmental regulation.

Thus, in *Annenberg v. Roberts*, 333 Pa. 203, 2 A.2d 612 (1938), we recognized that the privacy interest possessed by an individual citizen extends to his financial records, and so a subpoena of such records issued by a committee of the Legislature is "void [if it does not] show that the demands therein are germane to the inquiry..."]. *Id.*, 333 Pa. at 214, 2 A.2d 612.[7]

The Supreme Court has long acknowledged that the class of persons engaged in public service presents special difficulties in cases involving asserted privacy interests. In *Ex parte Curtis*, 106 U.S. 371, 1 S.Ct. 381, 27 L.Ed. 232 (1882), the Court affirmed the power of Congress to regulate, within reasonable limits, the political conduct of the government's employees.

> "The evident purpose of Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service. Clearly such a purpose is within the just scope of legislative power...". *Id.*, at 373, 1 S.Ct., at 383.

See also, *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Buckley v. Valeo, supra; Civil Service Commission v. Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

In all the above-cited cases the Court upheld congressional regulation in the face of challenges invoking express constitutional guarantees. Even while noting that the regulation

7. See, also, *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979).

may constitute "prohibitions against acts by public officials that are permitted to other citizens," such regulation was upheld. *United Public Workers, supra,* 330 U.S. at 96, 67 S.Ct. at 567.

Appellants in the instant case assert not so much an express constitutional protection as the somewhat more ephemeral right to privacy. The *Nixon* Court was instructive in this regard when it observed that when one "enter[s] public life he voluntarily surrender[s] the privacy secured by law for those who elect not to place themselves in the public spotlight." *Nixon, supra,* 433 U.S. at 455, 97 S.Ct. at 2796.

We agree with appellants that the financial disclosure requirements of the Act do in fact require that they abdicate some measure of their privacy interests in their financial histories which might, under different circumstances, be successfully invoked by private persons. We are constrained to observe, however, as did the *Nixon* Court, that appellants have to some extent voluntarily surrendered those interests.

Moreover, the intrusion into appellants' private affairs under the Act is not great; the Legislature's interest in securing public confidence in the government, at all levels, is not small. The financial disclosure requirements of the Act are reasonably tailored to fit a legitimate legislative function. Appellants' claims to the contrary are without merit.

III. *The Claim of Invalidity of Appointment*

Appellants next claim the appointment by the Governor of members of the Ethics Commission was in violation of Article IV, § 8 of the Constitution of this Commonwealth. The pertinent constitutional provision is as follows:

"(a) The Governor shall appoint a Secretary of Education and such other officers as he shall be authorized by law to appoint. The appointment of the Secretary of Education and of such other officers as may be specified by law, shall be subject to the consent of two-thirds or a majority of the members elected to the Senate as is specified by law.

"(b) The Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the vacancy and not thereafter. The Senate shall act on each executive nomination within 25 legislative days of its submission. If the Senate has not voted upon a nomination within 15 legislative days following such submission, any five members of the Senate may, in writing request the presiding officer of the Senate to place the nomination before the entire Senate Body whereby the nomination must be voted upon prior to the expiration of five legislative days or 25 legislative days following submission by the Governor, whichever occurs first. If the nomination is made during a recess or after adjournment sine die, the Senate shall act upon it within 25 legislative days after its return or reconvening. If the Senate for any reason fails to act upon a nomination submitted to it within the required 25 legislative days, the nominee shall take office as if the appointment had been consented to by the Senate. The Governor shall in a similar manner fill vacancies in the offices of Auditor General, State Treasurer, justice, judge, justice of the peace and in any other elective office he is authorized to fill. In the case of a vacancy in an elective office, a person shall be elected to the office on the next election day appropriate to the office unless the first day of the vacancy is within two calendar months immediately preceding the election day in which case the election shall be held on the second succeeding election day appropriate to the office.

"(c) In acting on executive nominations, the Senate shall sit with open doors. The votes shall be taken by yeas and nays and shall be entered on the journal."

The members of the Ethics Commission were appointed by the Governor without his having sought the consent of the Senate. Appellants, by their count in *quo warranto*, raised a claim that Article IV, § 8 of the Constitution was thereby violated and sought the ouster from office of the commission members.

Commonwealth Court addressed the merits of this issue and found appellants' claim to be unpersuasive. While we do not disagree with that court's resolution of the question on its merits, we conclude Commonwealth Court erred in ruling appellants had standing to raise the issue in the first instance.

For a party to have standing to sue, several requisites must be satisfied.

"The core concept ... is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *William Penn Parking Garages, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280–81 (1975) (footnotes omitted).

These appellants do not argue to us any interest beyond that shared in common by all citizens. Appellants do not contend the mere existence of the Ethics Commission injures them, although they do, of course, challenge other portions of the Act. Appellants do not argue that their duties or obligations have in any fashion been compounded or their rights or privileges in any way diminished by the appointment of the presently sitting commission members. Their complaint is merely that the appointments were not made in accordance with the law. The interest so pleaded is no different in quality or quantity than that shared by the citizenry in general.

Additionally, standing to sue requires that the interest asserted be not only substantial, but also "direct," that is, "the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." *William Penn, id.,* 464 Pa. at 195, 346 A.2d at 282. *See also, Warth v. Seldin,* 422 U.S. 490, 503–504, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975). Appellants have not attempted to demonstrate how the injury allegedly caused them by the terms of the Act has in turn been caused by the

Governor's appointment of commission members without confirmation.

Finally the standing test requires that the interest asserted be " 'immediate' and 'not a remote consequence of the judgment' . . . . [T]hese two requirements reflect a single concern. Here that concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it." *William Penn, Id.,* 464 Pa. at 197, 346 A.2d at 283.

On the record before us, appellants have failed to demonstrate, even if they possess an interest different from that held by the citizenry at large, and even if such interest is direct, that the injury to that interest is not a remote consequence of the action complained of.

Appellees correctly indicate that but two classes have been held to have standing to raise an Article IV, § 8 violation: Senators themselves; *Frame v. Sutherland,* 459 Pa. 177, 327 A.2d 623 (1974); *Stroup v. Kapleau,* 455 Pa. 171, 313 A.2d 237 (1973); and officials contesting their successors' right to office. *Crisconi v. Shapp,* 5 Pa.Cmwlth. 275 (1972).

While we do not now hold that standing to raise an Article IV, § 8 violation is under all circumstances limited to these two classes, we do hold that appellants in the instant case have no standing to assert that claim.

IV. *The Equal Rights Amendment Claim*

Appellants next claim the financial disclosure requirements of the Act offend Article I, § 28 of the Pennsylvania Constitution.

Article I, § 28 of the Constitution provides:

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." [8]

8. Appellants' sole contention in this case is the specific claim that the Equal Rights Amendment is violated by the act. No due process argument has been raised by the parties at any stage in the proceedings. The decision by the members supporting reversal to create and then dispose of a due process argument is in contravention of our

Appellants argue that since one of their number, a woman, has been denied permission by her husband to make the required disclosure of his financial affairs, an unconstitutional sexually discriminatory effect is worked upon her.

We have held that the purpose of the equal rights amendment is to eliminate sex as a "classifying tool." *Commonwealth v. Butler*, 458 Pa. 289, 296, 328 A.2d 851, 855 (1974). But we have also held, as appellants correctly state, that "facially neutral . . . policies which have the practical effect of perpetuating . . . discriminatory practices" constitute discrimination by sex. *General Electric Corporation v. Human Relations Commission*, 469 Pa. 292, 309, 365 A.2d 649, 654 (1976).[9]

Appellants do not deny that the Act at issue is facially neutral; nor, in our view, could they. Rather appellants argue that "[w]ith men being the 'heads of households' and the primary breadwinners in most cases, it is submitted that women desiring to seek public office will be frequently denied the opportunity by their spouses' refusal to make the required financial disclosures." (Brief for appellants at 20).

The discrimination, if any, of which appellants complain is not "under law" as contemplated by Article I, § 28, but rather results from purely private action. The Act itself places its burdens equally upon both sexes. As the Commonwealth Court correctly found: "Wives as well as husbands might object to public disclosure of the family's finances and wives as well as husbands might deter their spouses from public office rather than agree to public disclosure. The burdens upon the family unit as well as the individual might be great, but these burdens place no more

often reiterated principle that courts will confine their consideration to issues presented by the parties and not usurp the role of the litigants in the management of the lawsuit. *Cf. Weigand v. Weigand*, 461 Pa. 482, 337 A.2d 256 (1975). See also, *Witt v. Commonwealth, Department of Banking*, 493 Pa. 77, 425 A.2d 374 (1981) (Opinion in Support of Remand) (at 376–377).

9. *General Electric*, however, was not decided on the basis of Article I, § 28, but rather the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

weight upon one sex than the other." *Snider v. Shapp*, 45 Pa.Cmwlth. 337, 353, 405 A.2d 602, 611 (1979).

Appellants' contention that the Act is violative of Article I, § 28 is without merit.

### V. *The Claim of Violation of the Right to a Republican Form of Government*

Section 3(b) of the Act provides:

"No person shall offer or give to a public official or public employee or candidate for public office or a member of his immediate family or a business with which he is associated, and no public official or public employee or candidate for public office shall solicit or accept, anything of value, including a gift, loan, political contribution, reward, or promise of future employment based on any understanding that the vote, official action, or judgment of the public official or public employee or candidate for public office would be influenced thereby."

Appellants argue that this section of the Act is "repugnant to the principles of a republican form of government." The gravamen of appellants' complaint is that most campaign contributions are made with the understanding that the candidate-recipients "will be faithful to their platforms." Thus appellants conclude § 3(b) of the Act criminalizes this most common type of contribution and will have "a chilling and stifling effect on both campaign contributions and statement of positions of candidates to public office." (Brief for appellants at 21).

Commonwealth Court summarily disposed of this claim, observing that "this section merely prohibits the buying and selling of votes and influence." 405 A.2d at 603. We agree. A determination of the merit of appellants' claim, if any, must await a more concrete case.

### VI. *Remedy*

We have held, in Part I *supra*, that the Act is violative of appellants' rights to the equal protection of the laws. This unconstitutional effect is the result of that portion of the

definitional section of the Act wherein one cognizable class of public servants is excluded from the definition of "public servant," and hence from the strictures of the Act as a whole. We turn now to the matter of remedy.

In *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974), we concluded that the Muncy Act violated the rights of convicted female offenders to the equal protection of the laws. In fashioning a remedy we determined that "in view of the Legislature's intent . . ." we could sever one sentence from the Act and thereby cure the constitutional defect. We further noted that "the valid part of [the Act], standing alone, is easily executed in accordance with the legislative intent; this valid portion is independent and complete within itself." *Butler, Id.*, 458 Pa. at 303 n.22, 328 A.2d 851.

Mr. Justice Pomeroy, concurring, correctly stated: "When a statute, either alone or in conjunction with another statute or statutes, infringes on constitutional rights, this Court has an obligation to make every effort to salvage the statute by an appropriate excision so long as legislative intent will not be frustrated thereby." *Id.*, 568 Pa. at 306, 328 A.2d 851. See, also, the Statutory Construction Act of 1972, 1 Pa.C. S.A. § 1925.

Instantly we are provided by the Legislature with an unequivocal statement of its intent. In furtherance thereof the Legislature has also provided that any provision of the Act held to be invalid may be severed from the remainder. 65 P.S. § 413. Although we recognize the existence of a severability clause is not the controlling factor in determining whether an offensive portion of a statute may be excised, it must be given great weight. *Saulsbury v. Bethlehem Steel Company*, 413 Pa. 316, 196 A.2d 664 (1964). We conclude that in this case the Legislature was correct: that portion of section two of the Act which causes the unconstitutional effect may be severed from the remainder of the statute without doing violence to the Legislature's intent. Thus, that portion of 65 P.S. § 402 which provides " 'public official' shall not include any appointed official who receives no compensation other than reimbursement for actual ex-

penses" is excised from the Act. The effect of such excision is to bring all school directors, appointed or elected, within the sway of the statute; all school directors must now comply with its requirements.

Accordingly, the determination of the Commonwealth Court is modified to the extent it held the statute is not violative of the Equal Protection Clause, and the exclusion of appointed, non-compensated officials from the definition of "public officials" is removed. In all other respects, the determination of the Commonwealth Court is affirmed and the Order of the Commonwealth Court sustaining appellees' preliminary objections and dismissing appellants' Amended Petition for Review is affirmed.

KAUFFMAN, J., joins in this opinion.

NIX, J., joins in this opinion, except to the extent that this opinion removes the exclusion of appointed, non-compensated officials from the definition of "public official."

LARSEN and FLAHERTY, JJ., join in this opinion, except to the extent that this opinion refuses to reach the due process claim involving financial disclosure by family members.

## OPINION

NIX, Justice.

In my judgment the Commonwealth Court was correct in rejecting the constitutional challenges to the "Public Officials Ethics Law" [1] excluding from the Act's definition of a "public official" "any appointed official who receives no compensation other than reimbursement for actual expenses." 65 P.S. § 402. I believe that the exception served a salutary purpose and was well within constitutional confines.

The error of the majority can be attributed to its myopic definition of the classification as one between the school

1. Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. § 401, *et seq.* (Supp. 1980–81).

directors of Philadelphia (and appointed school directors in other areas of the state filling an unexpired term) and all of the other elected school directors in the Commonwealth. Proceeding within this framework, the majority focused upon the duties and responsibilities of the school director and concluded that the classification was unreasonable. Such an analysis distorts the issues involved.

The instant exclusion was not designed solely to distinguish between the elected and appointed school directors. To the contrary, it was to make available a category of appointed "public official" performing a myriad of functions in government who would be exempted from the requirements of the Act provided those individuals were not compensated for those services. The fact that at the moment only appointed school directors might fall within this exception is of no consequence. The exception provided the opportunity to permit political subdivisions to create positions whereby they could tap the expertise of those who have developed unique talents in their private business and professional careers, to offer volunteer public service. Most of these individuals, who would be able to offer significant contributions, would not be induced by public salaries and probably would be deterred by the requirements of the Act. A judgment that the exclusion in the Act's coverage to make available this rich resource for governmental service is clearly a fair and substantial basis for the legislature's actions in this regard.

I agree with the majority that the spousal disclosure requirement does not offend the Pennsylvania Equal Rights Amendment, Pennsylvania Constitution, art. 1, § 28. I also agree with the majority that appellants have not raised a due process claim with reference to this requirement and I express no views on that subject.

## OPINION

FLAHERTY, Justice.

I join the majority's holding that the definition provision of the Public Officials Ethics Law (defining "public offi-

cial"), 65 P.S. § 402 (Supp. 1980–1981), violates the Equal Protection Clause of the United States Constitution. I dissent, however, from the upholding of sections four and five of the Act, 65 P.S. §§ 404, 405 (Supp. 1980–1981), which requires the disclosure of the financial affairs of the employee's, official's or candidate's family. Joining with Mr. Justice Roberts, I would hold that the Act's requirement that those persons who must disclose their own financial interests and the financial interests of their spouses, subjecting them to criminal penalties in the event of nondisclosure, violates the due process clause. It cannot be presumed that a person has control over his spouse so as to compel disclosure of the spouse's financial affairs. In the absence of this control, there is a due process violation when criminal penalties may be imposed for non-disclosure.

ROBERTS, Justice, dissenting.

## I.

### The Scope of Coverage of the Ethics Act Is Constitutional as Applied to School Directors.

By rewriting the Ethics Act to bring within its scope those public officials the Legislature has specifically excluded, the majority has usurped the Legislature's function. The Commonwealth Court was clearly correct in its determination that the classification of public officials which the Ethics Act employs is constitutional as applied to school directors throughout the Commonwealth, and does not violate equal protection. See *Snider v. Shapp*, 45 Pa.Cmwlth. 337, 405 A.2d 602 (1979) (Wilkinson, J.). Thus, I dissent.

### A.

The school directors to whom the statute does not apply consist only of (1) school directors within Philadelphia, Pennsylvania's only school district of the first class and, thus, the only district authorized by law to have appointed school directors; and (2) school directors in other school districts in the Commonwealth who are interim appointees prior to the

next municipal election occurring more than sixty days after appointment. 24 P.S. §§ 3–301 et seq. When the classification is measured against the statute's stated purpose to prevent conflicts of interest with the public trust, it is manifest that there exist fair and substantial differences between the school directors within and outside the statute's scope which are relevant to the legislative objective. The exclusion of appointed uncompensated officials clearly reflects the Legislature's judgment that the financial disclosure requirements imposed upon elected officials should not also be imposed upon Philadelphia school directors, who have considerably less fiscal power than elected school directors, or upon interim appointees, who are immediately needed to fill vacancies.

In *Danson v. Casey*, 484 Pa. 415, 399 A.2d 360 (1979), this Court recognized that school directors in Philadelphia are uniquely situated in the performance of their duties when compared with school directors in other districts in this Commonwealth. We stated:

"Philadelphia is Pennsylvania's only school district of the first class. See School Code, 24 P.S. § 2–201. Pursuant to statutory authority, the voters of Philadelphia have adopted a home rule school district. See Act of August 9, 1963, P.L. 643, §§ 1 et seq., 53 P.S. §§ 13201 et seq.; Educational Supplement to the Philadelphia Home Rule Charter (hereinafter Charter). While boards of education of other classes of school districts must be elected, School Code 24 P.S. §§ 3–301 et seq., section 12.12–201 of the Charter authorizes appointment of Philadelphia's school board by the Mayor of Philadelphia. See also School Code, 24 P.S. § 3–301. Because the General Assembly may delegate its legislative power to levy taxes only to elected officials, the Philadelphia School Board does not have direct power to levy local taxes. *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90 (1937). The School District of Philadelphia is, therefore, in a unique position with regard to local taxation."

Id., 484 Pa. at 422, 399 A.2d at 364. Philadelphia school directors must account to City Council each year with "a lump sum statement of anticipated receipts and expenditures for the next fiscal year and a request for authority to levy taxes to balance its budget for the year." Philadelphia Home Rule Charter, 351 Pa.Code § 12.12–303(b). Because school directors in Philadelphia have less control over the public purse than school directors in other districts, and must obtain approval of proposed taxes and expenditures from elected officials who are themselves subject to the Ethics Act, it is entirely rational for the Legislature to exclude Philadelphia school directors from financial disclosure requirements designed to prevent conflicts of financial interests with the public trust. Whether this is a wise choice is a legislative determination, and not one for this Court. To be a valid exercise of legislative power it is sufficient that the exclusion have a fair and rational relationship in substance to the statute's purpose.

Similarly, the temporary nature of interim appointments in school districts which elect their directors provides an inherent check on potential abuses of these offices for private gain. This, too, constitutes a fair and substantial basis for excluding these school directors from the statute. As the Supreme Court of the United States has stated, "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations ...." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). See *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The exclusion of appointed uncompensated officials also indicates a legislative purpose to encourage individuals to accept uncompensated appointments not only to the School Board in Philadelphia but also to myriad posts throughout this Commonwealth. The Legislature, in seeking to promote public trust in government and to prevent conflicts of interest, established a permissible scheme to further this legislative judgment. It is not this Court's function to substitute its judgment for that of the Legislature. The Legislature

may well have thought that qualified persons unwilling to enter the fray of electoral politics would best be encouraged to volunteer and accept appointments which offer no compensation if they were not required to comply with the detailed disclosure requirements of the Ethics Act. Thus, by excluding appointed uncompensated officials from its requirements, the act accommodates and promotes the vital goal of public participation in government.

"It is clear that 'the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.'" *Springfield School District v. Dep't of Education*, 483 Pa. 539, 569, 397 A.2d 1154, 1170, quoting *Dandridge v. Williams*, 397 U.S. at 486–87, 90 S.Ct. at 1162. "Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think.... Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citations omitted). Thus, because the exclusion of appointed uncompensated officials, including Philadelphia school directors, has a reasonable, fair and substantial relation to the purposes of the legislation, the Ethics Act as enacted by the Legislature is constitutional as applied.

## B.

In rewriting the Ethics Act to strike down the exclusion from the act of all appointed uncompensated public officials in this Commonwealth the majority not only usurps the Legislature's role but also contravenes the express language of the act. Indeed, it may well be that the Legislature would not have enacted the Ethics Act at all without the exclusion which the majority strikes down.

An invalid portion of a statute may be severed only if, after severance, the statute can be executed in accordance with the legislative intent. See 1 Pa.C.S. § 1925. The majority erroneously relies upon *Commonwealth v. Butler,*

458 Pa. 289, 328 A.2d 851 (1974), a case in which, unlike here, legislative intent could be easily ascertained. There, this Court held that the last sentence of 61 P.S. § 566, which prohibited minimum sentences for female offenders, was unconstitutional, yet severable from the rest of Section 566. In reaching this result the Court concluded:

"It is certain that the legislative intent to have women convicted of crime be imprisoned at Muncy (where facilities for women exist) is not 'essentially and inseparably connected with,' but rather is distinct and separate from the question whether those women should serve minimum sentences. Moreover, the valid part of § 566, standing alone, is easily executed in accordance with the legislative intent; this valid portion is independent and complete within itself. See *Commonwealth v. Armao*, 446 Pa. 325, 338, 286 A.2d 626, 632 (1972); *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 320–21, 196 A.2d 664, 666–67 (1964); *Rieck-McJunkin Dairy Co. v. Milk Control Comm'n*, 341 Pa. 153, 162–63, 18 A.2d 868, 871–72 (1941); *Rutenberg v. Philadelphia*, 329 Pa. 26, 39, 196 A. 73, 79 (1938). See generally 2 J. Sutherland, Statutes and Statutory Construction §§ 44.01–44.20 (4th ed. C. Sands 1973); 2 C. Antieau, Modern Constitutional Law § 15.35 (1969)."

Id., 458 Pa. at 303 n.22, 328 A.2d at 859 n.22.

A similarly clear statement of legislative intent cannot be found in the statute now before this Court. Unlike *Butler*, which involved two separate and independent statutory provisions relating to minimum sentences and prison facilities, each of which could stand without the other, here the statutory provisions are "essentially and inseparably connected." In articulating who is to come within the requirements of the Ethics Act, the Legislature expressly stated that appointed uncompensated officials are to be treated differently than either elected officials or appointed compensated officials. Appointed uncompensated officials, unlike other public officials, are to be excluded from the act. 65 P.S. § 402. Manifestly, the majority errs in holding that, contrary to the express legislative intent, all public officials must be treated the same.

## II. OPINION IN SUPPORT OF REVERSAL

### The Mandatory Financial Disclosure Requirements Relating to Spouses Violate Due Process.

By the terms of the Ethics Act, those persons within its coverage who fail to disclose the financial interests of their spouses will be denied public office and may be subject to criminal penalties including a fine of not more than $1,000 or imprisonment for not more than one year, or both. 65 P.S. §§ 404, 405, 409(b). On the record before this Court, the refusal of an office seeker's spouse to disclose his personal financial interests denied her the opportunity to run for office, despite the fact that those interests were beyond her knowledge or control. In the case of an office holder, a similar refusal by the spouse could result in not only the loss of office but also the imposition of criminal penalties. Where disqualification from office and criminal liability result not from unwillingness, but from inability to comply with the act's requirements, the imposition of these sanctions is fundamentally unfair and clearly violates the due process requirements of the Constitutions of the United States and of Pennsylvania.* See *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) (imprisonment because of inability to pay fine unconstitutional); *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (1959) (imprisonment for vicarious criminal offense violates due process); Dobbs, Remedies § 2.9, at 104 (1973) (inability to comply is good defense against both criminal and civil contempt charges). See also *Perillo v. Commonwealth, DPW*, 476 Pa. 494, 383 A.2d 208 (1978) (Opinion in Support of Reversal, Manderino, J.) (denial of AFDC benefits because of refusal of mother's non-applicant, non-recipient husband to encumber realty violates due process).

---

* Appellants challenge the constitutionality of the spousal disclosure requirement on the theory that it violates the Pennsylvania Equal Rights Amendment, Pa.Const. art. 1, § 28. Although this theory does not have merit, the constitutional challenge is meritorious and may properly be addressed. See *Yeaple v. Yeaple*, 485 Pa. 399, 402 A.2d 1022 (1980).

The Ethics Act not only penalizes those within its scope who fail to comply with the spousal disclosure requirements; it permits no defense. Thus, in effect, the act creates an irrebuttable presumption that a person has knowledge or control of his or her spouse's financial interests. However, as the Supreme Court of the United States has stated, a presumption violates due process "where the inference is so strained as not to have a reasonable relation to the circumstances of life . . . ." *Tot v. United States*, 319 U.S. 463, 468, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943).

This Court has made clear that the fiction that husband and wife are one entity has no place in this Commonwealth. In 1979 we held that an individual's testimony under the Pennsylvania Dead Man's Statute may not be excluded solely on the basis of his marital status. *Estate of Grossman*, 486 Pa. 460, 406 A.2d 726 (1979). There we stated:

> "Any presumption of identity of interest is based upon the same outmoded social conditions and policy as was the common law legal fiction of unity of person of husband and wife.
>
> .     .     .     .     .
>
> Modern conditions demand that courts no longer engage in the automatic and unsupported assumption that one's pecuniary or proprietary interest is identical to that of one's spouse."

Id., 486 Pa. at 472–73, 406 A.2d at 732. More recently, guided by the same considerations, this Court abolished completely the defense of interspousal immunity. *Hack v. Hack*, 495 Pa. 300, 433 A.2d 859 (1981). See also *Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) (unilateral right of husband to dispose of jointly owned property without wife's consent violates equal protection); *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (automatic exclusion of spousal adverse testimony invalid); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (marital couple not independent entity but association of two individuals).

The presumption that an individual has knowledge or control of his spouse's financial interests is overbroad, and bears no reasonable, fair and substantial relation to the statute's purpose. Thus, it cannot justify mandatory disqualification from public office and criminal penalties against persons who are unable to comply with the spousal disclosure requirements. For this reason, those statutory provisions that require an individual to disclose the financial interests of his or her spouse over which he has no control must be declared unconstitutional. See 65 P.S. § 413 (severability provision).

LARSEN and FLAHERTY, JJ., join in Part II of this Opinion.