508 A.2d 281

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Vernon C. BUCKLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 1985.

Decided April 14, 1986.

Vernon C. Buckley, pro se.

Robert Coyne, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

ZAPPALA, Justice.

This is a direct appeal from an order of the Commonwealth Court, our jurisdiction being derived from 42 Pa.C.S. § 723(b). Commonwealth Court affirmed the order of the Board of Finance and Revenue, sustaining the Department of Revenue's assessment filed against the Appellant, Vernon C. Buckley, for failure to pay personal income tax. At issue is the constitutionality of the 1978 Reciprocal Personal Income Tax Agreement between Pennsylvania and New Jersey insofar as it distinguishes between "compensation" and "net profits".

The Appellant is a resident of New Jersey who practices his profession as an osteopathic physician and surgeon from an office in Philadelphia. Between 1971 and 1977, the Appellant paid the Pennsylvania personal income tax. In 1978, he filed a personal income tax return reporting a net profit of $33,798.91 but asserting no tax liability. Appellant argued that pursuant to the Reciprocal Personal Income Tax Agreement between Pennsylvania and New Jersey he, as a non-resident, was exempt from the tax. Successive petitions for review to the Department of Revenue Board of Appeals and the Board of Finance and Review resulted in the sustaining of the assessment for a tax deficiency.

In December of 1976, Pennsylvania and New Jersey entered into an agreement which became effective in 1978. The agreement provides that persons who reside in one state and are employed in the other may file certificates of non-residence with their employers and thereby exempt themselves from filing returns and paying personal income taxes on compensation paid in the state where they are employed. Employers receiving such certificates of non-residence are obligated to withhold income tax at the rate appropriate for the residence state of the employees and to remit the taxes so collected to that state. The agreement further provides that nothing in it "shall be interpreted to exempt a resident of Pennsylvania or New Jersey who has taxable income in the Commonwealth or State of non-residence *other than in the form of compensation* from liability for payment of income tax or filing an income tax return with regard to such other taxable income."

■ Because of this latter provision, the Appellant is clearly not entitled to exemption from Pennsylvania's personal income tax as a non-resident; the entire $33,798.91 of his income earned in Pennsylvania is "net profits" and not "compensation." For purposes of the personal income tax imposed under the Tax Reform Code of 1971, "compensation" includes "[a]ll salaries, wages, commissions, bonuses and incentive payments whether based on profits or otherwise, fees, tips and similar remuneration received for services rendered, whether directly or through an agent and whether in case or in property...." 72 P.S. § 7303(a)(1). "Net profits" are distinguished as being "[t]he net income from the operation of a business, profession, or other activity, after provision for all costs and expenses incurred in the conduct thereof determined either on a cash or accrual basis in accordance with accepted accounting principles and practices, but without deduction of taxes based on income." 72 P.S. § 7303(a)(2).

In response to the conclusion that the Agreement does not permit a non-residence exemption for net profits, the Appellant challenges the Agreement as violative of the equal protection clause, Amendment XIV, Section 1, of the

United States Constitution and the uniformity clause of the Pennsylvania Constitution, Article VIII, Section I.[1]

It has often been stated that uniformity and equal protection clause challenges of taxing legislation, like challenges to the exercise of the police power where the legislature also enjoys broad discretion, are subject to review according to the "rational basis" standard. See *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985) and cases cited therein. *See also Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981). The classification at issue is analyzed "to determine whether it is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation." *Snider v. Thornburgh*, 496 Pa. at 168, 436 A.2d at 597. The burden rests upon the taxpayer to demonstrate that the classification is unreasonable, *F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971), a burden which has been characterized as "heavy", *Amidon v. Kane*, 444 Pa. 38, 279 A.2d 53 (1971). A challenger must overcome the presumption of constitutionality afforded all acts of the General Assembly, 1 Pa.C.S. § 1922(3), and legislation will not be declared unconstitutional unless it "clearly palpably, and plainly violates the constitution." *Snider v. Thornburgh*, 496 Pa. at 166, 436 A.2d at 598.

■ We begin by noting that while the Appellant *asserts* that the taxing scheme permitted by the agreement is irrational, he does little to *demonstrate* the unreasonableness he perceives. The mere assertion that there is no justification for the distinction between wage earners and self-employed persons cannot be considered sufficient to meet the challenger's heavy burden of proof. Neither is it sufficient to present, as Appellant does, one or two examples of the different results accruing to different persons because of the legislative classification. Different results

1. Appellant also argues that the Agreement violates the Compact Clause, Article I, Section 10, of the United States Constitution. Because the Commonwealth Court fully addressed this meritless claim, we need not examine it further. *See* 81 Pa. Commonwealth 530, 537–538, 475 A.2d 160, 163–164.

are the necessary product of statutory differentiation. It is only where the legislative scheme is based on distinctions irrelevant to the statutory purpose and affects related objects of the legislation differently that the scheme can be said to be irrational.

. We need not search long and hard to recognize a rational basis for the challenged legislation. A worker receiving compensation has little choice about where he earns his income. The business entity by which he is employed and from which he derives compensation determines the location where his skills and labor will be put to use. The interests in promoting interstate commerce and economic comity between separate sovereigns provide ample reason for the policy of treating interstate commuters as though their income was earned in the state of their residence rather than in the state of their employment. A person operating a business from which he derives net profits is not similarly situated. As the proprietor of the business he has the freedom to locate at a place of his own choice. The tax consequences of earning profits in a state other than the state of his residence must be considered as factors entering into his business decision to so locate.

The ease of administration in collecting and reporting personal income tax withholding money adds to the rational basis for this statute. Without the interstate agreement each New Jersey resident receiving compensation in Pennsylvania would have tax money withheld from his pay at the Pennsylvania rate. He would then be required to annually file a Pennsylvania tax return in which he claimed non-residence and a full refund of money withheld. He would also be required to file a New Jersey tax return in which he reported his full income to New Jersey taxing authorities and pay the appropriate New Jersey tax. A similar scenario would apply in the case of all Pennsylvania residents working in New Jersey. Under the statute, however, this entire process is simplified by allowing the employer to withhold not at the rate of the state where it is located, but at the rate of the employee's residence state. The employee is thus exempted from filing, and the authorities are re-

lieved of the burden of processing returns for refunds in the employing-state and separate returns for payment in the residence-state.

By contrast, in the case of an individual earning net profits there is no withholding of either Pennsylvania or New Jersey tax. The responsibility for ensuring that the tax is collected (paid) lies not with an employer but with the taxpayer himself. The requisite forms for reporting the manner in which money was earned, the taxable status of that money, and appropriate credits, if any, for taxes paid on that money to another jurisdiction, will be the same regardless of the residence and business addresses of such a person. Rational decision-making does not mandate that by choosing to relieve the administrative burdens of a large number of taxpayers who are not in the first instance required to ensure collection of taxes, the Commonwealth must also reduce the administrative burdens encountered by a much smaller group who are primarily responsible for "collecting" and reporting their own taxes.

The Order of the Commonwealth Court is affirmed.

HUTCHINSON, J., joined in the Majority Opinion and filed a Concurring Opinion.

LARSEN and FLAHERTY, JJ., filed Dissenting Opinions in which PAPADAKOS, J., joined.

HUTCHINSON, Judge, concurring.

I join the majority opinion.

I note appellant's argument that the effect of the Agreement is that his total tax liability is higher than that of a non-resident whose income in Pennsylvania is in the form of compensation. He cites as the reason for this disparity the fact that the wage earner can use his Philadelphia Income Tax to offset his New Jersey income tax and does not file a Pennsylvania income tax return. The self-employed person, in contrast, can use the Philadelphia tax to offset his New Jersey income tax but is required to pay Pennsylvania income tax. I do not believe that this discrepancy is sufficient weighed against the governmental interests involved

to violate equal protection at the applicable level of scrutiny, rational basis.

LARSEN, Justice, dissenting.

I join Mr. Justice Flaherty's dissenting opinion which would hold unconstitutional the Reciprocal Personal Income Tax agreement between Pennsylvania and New Jersey, except that I would have provided a six month stay of judgment to afford the appropriate governmental bodies an opportunity to correct the constitutional infirmity, *i.e.*, to eliminate the disparate treatment of similarly situated taxpayers. *See Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 88, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (although broad grant of jurisdiction to bankruptcy court judges was unconstitutional, decision was to apply prospectively only with judgment stayed for limited period to "afford congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws.")

PAPADAKOS, J., joins in this Dissenting Opinion.

FLAHERTY, Justice, dissenting.

I dissent from the majority Opinion, not because I disagree with its statement of the applicable principles of law, but because I disagree with the majority's application of these principles to the facts of this case.

I agree, for example, that our standard of review for cases in which a classification has been challenged on an equal protection basis is articulated in *Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981), where this Court defined our inquiry as:

> whether [the classification] is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation.

496 Pa. at 166–168, 436 A.2d at 596–597.

I also agree that there is a presumption of constitutionality of a classification, and that the taxpayer bears the

burden of demonstrating that the classification is unreasonable or that it is without fair and substantial relation to the object of the legislation.

I disagree, however, that the taxpayer in this case has not demonstrated the unreasonableness of the tax scheme. Dr. Buckley has established that New Jersey wage earners and self-employed persons who work in Pennsylvania are treated differently for Pennsylvania income tax purposes. He asserts that there is no valid reason for this difference in treatment and that there is no rational basis for the classification. Since there is no apparent significant tax difference between wage earners and self-employed persons, and because there is no apparent reason for classifying these persons differently, Dr. Buckley's assertion that there is no justification for the distinction between wage earners and self-employed persons should be treated as demonstrating prima facie unreasonableness. To do otherwise would require Dr. Buckley to prove a negative: that no valid reason for the classification *can* exist. If that were required, his burden of demonstrating the unreasonableness of the governmental classification would become a virtual impossibility. *See In re Appeal of Beaver Gasoline Company*, 445 Pa. 571, 575, 285 A.2d 501, 504 (1971).

I disagree, also, that the Commonwealth demonstrated that the classification is reasonable or that it has offered a reason for the treatment of the two types of taxpayers which has a fair and substantial relation to the object of the legislation. The majority suggests that the classification is justified by the fact that self-employed persons can locate where they wish, but wage earners cannot, and that the ease of administration of tax returns is facilitated by the classification.

To begin with, it could as easily be argued that individuals may work for wages where they choose as that individuals may be self-employed where they choose. If it is true that a sheet metal worker must go where there is sheet

metal work, it is also true that a doctor must go where there is a need for doctors. In the absence of evidence that doctors are as much needed in New Jersey as they are in Philadelphia, it is mere speculation on the majority's part that Dr. Buckley was as free to set up a practice in one state as the other.

Secondly, it should never be the case that classifications may be promulgated by any governmental authority because of what the majority refers to as "ease of administration." By that standard, equal protection of the laws would cease to exist, for it would surely be the case that any governmental classification would serve to make some bureaucratic function easier.

Thus, the majority has failed to establish that the classification is reasonable, for there is no significant difference between a person who pays taxes on wages and one who pays taxes on income from a business. The majority has also failed to establish that the classification rests upon a difference in the classes which has a fair and substantial relation to the object of the legislation. The only differences in the classes, according to the majority, is that one class pays installments on its Pennsylvania tax liability which are withheld by its employers, and the other pays its tax liability at the end of the year and bears the responsibility of paying its own taxes. Absent the reciprocal agreement with New Jersey, members of both classes would file Pennsylvania tax forms at the end of the year. Regardless of what the object of the legislation is, therefore, the majority must needs fail to establish the second prong of the test articulated in *Snider v. Thornburgh*, supra, (that the classification rests upon a difference having an important relationship to the object of the legislation) for there is no essential difference between the classes.

The Commonwealth's case consists of a number of responses to the unreasonableness claim, which may be summarized as follows: (1) the agreement between the states fosters comity; (2) it creates an orderly, convenient and simple method of reporting and collecting taxes; (3) both states reconcile W–2 forms; (4) the agreement alleviates the

administrative burden on taxpayers living in one state and working in the other; (5) the agreement assists the states in enforcing withholding requirements against employers.

The flaw in these responses is that while the Commonwealth has given reasons for entering into the reciprocal agreement, not all of those reasons are relevant to the question of whether it is reasonable to exclude some classes of income earners and include others in a separate class subject to different tax burdens. Comity between the state (# 1), orderly operations (# 2), and easing the burdens on taxpayers (# 4), for example, have nothing to do with whether there is a reasonable distinction between the classes of self-employed and non self-employed which explains their difference in treatment. Such concerns may have to do with whether it is desirable for the Commonwealth *to have a reciprocal income tax agreement* with New Jersey, but they have nothing to do with whether there are differences between the groups of taxpayers *which justify the difference* in tax treatment.

The only reasons offered which might be relevant to the issue of whether the classification is reasonable and whether differences in the classes are significantly related to the object of the legislation are (# 3), the reconciling of W–2 forms, and (# 5) the enforcement of W–2 reporting requirements against employers.

Even reasons (# 3) and (# 5) are not, however, self-evidently valid justifications of differential treatment. The argument that employees and employers utilize W–2 forms which can be reconciled and which can be used to enforce reporting requirements is, without more, not an argument at all, but merely a description of the fact that W–2 forms are utilized for one group of persons and not for another. Without explanation, we have no idea of the significance of the fact that one group of taxpayers files W–2 forms and the other does not: this fact may be of extreme importance, of some importance, or of no importance at all for Commonwealth enforcement efforts. We are not told how reconciliation works or how W–2 forms enhance enforcement or reporting requirements.

In essence, the Commonwealth has described one feature *which distinguishes* the two classes, but it has not explained why this distinguishing feature *justifies* different treatment. Thus, since the Commonwealth has failed to rebut the prima facie unreasonableness of the classification, and since even the majority has failed to offer reasons which justify the different tax treatment of individual taxpayers, the classification should not withstand constitutional challenge.

For these reasons, I would hold that the Reciprocal Personal Income Tax agreement between the Commonwealth of Pennsylvania and the State of New Jersey is constitutionally infirm in that it contains a classification which violates both the Fourteenth Amendment of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution.*

PAPADAKOS, J., joins in this Dissenting Opinion.

---

\* I would not hold that any provision of the Tax Reform Code of 1971 is unconstitutional. To the contrary, Section 7356(b) of the Code, which authorizes reciprocal personal income tax agreements, also contains broad language authorizing "all other matters relating to cooperation between the states." I would conclude, therefore, that even though Section 7356 specifically authorizes the exemption of compensation from Pennsylvania income tax, its terms are broad enough to include, as well, an exemption for net profits.