American Family Life Assurance Company of Columbus, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department and Harvey Bartle, III, Insurance Commissioner, Respondents.

Argued April 8, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG and WILLIAMS, JR. Judge BLATT did not participate.

*Thomas N. O'Neill, Jr.,* with him *David N. Hofstein,* and *Robert M. Goldich, Montgomery, McCracken, Walker & Rhoads,* for petitioner.

*J. Sinclair Long,* with him *Albert J. Strohecker, III,* Assistant Attorneys General and *Edward Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, May 8, 1980:

Petitioner American Family Life Assurance Company of Columbus, in an equity action addressed to our original jurisdiction, has asked us to enjoin the Insurance Commissioner from enforcing regulations which establish minimum standards for individual accident and sickness insurance policies[1] promulgated under the Individual Accident and Sickness Insurance Minimum Standards Act (Act),[2] and to declare portions of that Act void, on the ground that the regulations are a product of an unconstitutional delegation of legislative power by the Act.

Presently before us for decision are the preliminary objections of the Commissioner, primarily seeking to have the complaint dismissed on the ground that our original jurisdiction in equity is not appropriate because an adequate and useful statutory remedy is available and has not been pursued.

---

[1] 31 Pa. Code §§88.2-88.169.

[2] Act of May 18, 1976, P.L. 123; 40 P.S. §776.1 *et seq.*

The Commissioner adopted the questioned regulations on June 24, 1978, making them effective on July 24, 1979, one year and thirty days later.

Petitioner's averments admit that it was not until July, 1979, shortly before the effective date of the regulations, that petitioner mailed its proposed cancer insurance policy forms to the Commissioner for approval. When approval was not granted by July 24, 1979, petitioner brought this action and also presented a motion for preliminary injunction, asking this court to enjoin enforcement of the regulations against those policy forms. After hearing, a preliminary injunction was denied primarily because petitioner's failure to submit its policy forms for consideration during the one-year grace period had demonstrated that such immediacy of need as would warrant a preliminary injunction was not present.[3]

The purpose of the Act, as stated in Section 1, is to provide standardization and simplification of terms

---

[3] In the hearing upon the motion for preliminary injunction, petitioner granted that the regulations, as adopted, absolutely prohibit petitioner from marketing the cancer insurance policies which petitioner has sold in Pennsylvania for a number of years. The substantiality of this category of petitioner's business was confirmed by evidence indicating over 140,000 policies in force, producing annualized premium income in excess of 4.5 million dollars, through the activities of 210 agents.

The Insurance Commissioner's evidence established that many insurance companies began submitting proposed accident and sickness insurance policy forms for approval under the Act and the regulations beginning about two months after June 24, 1978, the date of adoption of the regulations, in anticipation of the July, 1979 effective date of the regulations. Before July 24, 1979, the Insurance Commissioner approved accident and sickness policy forms of 67 companies, including, for cancer insurance specifically, four final approvals and four tentative approvals.

Petitioner's proposed policy forms, as filed in July, 1979, were disapproved by the Commissioner. Revised forms were later approved, but petitioner continues to seek authorization for the original versions.

and coverages in individual accident and health insurance policies, to eliminate misleading provisions and to provide for full disclosure in sale. 40 P.S. §776.1.

Section 3(b) of the Act, 40 P.S. §776.3(b), expressly authorizes the Commissioner to make regulations to specify prohibited policy provisions, not otherwise prohibited by statute, which "in the opinion of the Insurance Commissioner are unjust, unfair, or unfairly discriminatory."

Section 4(a), 40 P.S. §776.4(a), authorizes regulations to establish minimum standards for accident and health insurance benefits, with no mention of guidelines for the regulations, but subsection 4(c), 40 P.S. §776.4(c), does state that "[n]o policy . . . shall be delivered" which does not meet the regulations' standards "unless the Insurance Commissioner finds that such policy or contract will not be unjust, unfair or unfairly discriminatory."

Subsection 4(d), 40 P.S. §776.4(d), is an exemption provision that, notwithstanding any other provision of law or regulations, allows the Insurance Commissioner to approve a contract as to benefit standards, even if it does not meet the regulations, if in his "opinion . . . such policy or contract is not unjust, unfair or unfairly discriminatory."

These subsections, the only ones attacked by petitioner,[4] thus present, perhaps rather awkwardly, an expression of guideline standards for the Commissioner in making regulations concerning what policy provisions are to be prohibited, and in making regulations and exemptions concerning benefits; in all three instances, the standard refers to that which is

---

[4] Understandably, no question is raised concerning Section 3(a) of the Act, 40 P.S. §776.3(a), authorizing disclosure regulations. *See Pennsylvania Association of Life Underwriters v. Sheppard*, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977), in which interpretative regulations governing disclosure were upheld.

"unjust, unfair or unfairly discriminatory", and, in two of those instances, refers to the "opinion of the Insurance Commissioner" as the determinant.

Thus reviewing the statute's terms, we can see that petitioner's claim, that the Act embodies an unconstitutional delegation of legislative power, does pose a substantial and direct constitutional question as to the validity of the statute.[5]

Section 354 of The Insurance Company Law,[6] 40 P.S. §447b, provides that an insurer may file proposed forms with the Insurance Commissioner, and if the forms are disapproved, may obtain a hearing, an adjudication and ultimate judicial review. As of June 24, 1978, such review was available under the Administrative Agency Law[7] and, shortly thereafter, as of June 27, 1978, under the Judicial Code, 42 Pa. C.S. §5105 also.

---

[5] There is a substantial question as to whether the adjectives of "unjust, unfair or unfairly discriminatory" provide a sufficient standard such as: "unsafe or needs repair" and "dangerous to the public safety" in *Water & Power Resources Board v. Green Spring Co.*, 394 Pa. 1, 145 A.2d 178 (1958) ; or "the minimum requirements for the promotion of the health, safety, morals and general welfare" in *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A.2d 587 (1957).

On the other hand, the concern is whether the standards in this Act are overly general and therefore invalid like the "unnecessary hardship" and "intent and purpose of this act" standards for exemption in *Holgate Brothers v. Bashore*, 331 Pa. 255, 200 A. 672 (1938). Moreover, this Act's reference to the "opinion of the Insurance Commissioner" might be examined in the light of *Kellerman v. Philadelphia*, 139 Pa. Superior Ct. 569, 13 A.2d 84 (1940), which condemned a delegation to fix such barbershop hours "as in the opinion of the said Director of Public Health public necessity may require."

[6] Act of May 17, 1921, P.L. 682, *as amended*, §354; 40 P.S. §447 b.

[7] Act of June 4, 1945, P.L. 1388, §41, *formerly* 71 P.S. §1710.41, repealed by Act of April 28, 1978, P.L. 202, No. 53, §2(a), effective June 27, 1978. Similar provisions are now found at 2 Pa. C.S. §§501-508, 701-704.

Clearly the present issue—as to pursuing the administrative remedy rather than our equity jurisdiction[8]—depends upon a determination of whether or not the administrative process in this situation has anything to contribute to the decision of the issue. That doctrine, permitting a constitutional attack on the statute to be pursued directly in equity " '[w]here the administrative process has nothing to contribute to the decision of the issue,' " was clearly expressed in *Borough of Greentree v. Board of Property Assessments*, 459 Pa. 268, 279, 328 A.2d 819, 824 (1974). *Greentree* affirmed that the adequacy of the administrative remedy remains a consideration in a constitutional case, to the extent stated above, rejecting the proposition in *Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 244 A.2d 1 (1968) that equity has jurisdiction over any constitutional attack on a statute regardless of the adequacy of the administrative remedy.

However, stating the doctrine is easier than applying it. At first glance the constitutional attack here may seem to involve merely a study of the semantics of the statute, considering whether terms such as "unjust" and "unfair" and "unfairly discriminatory" are capable of serving as guidelines for administrative rule-making and decisions, and sufficient to enable the courts to review such executive actions.

On the other hand, in this situation it is apparent that judicial review of the effectiveness of the statutory criteria can be markedly more intelligent and functional if the standards can be examined, not only against the background of the regulations which have

---

[8] The priority of the statutory remedy continues to be expressed in 1 Pa. C.S. §1504, and a constitutional issue can be raised upon appeal to court, whether or not raised before the agency. 2 Pa. C.S. §703(a).

been developed, but also by viewing a prototype of the Commissioner's implementation of the statute through the actual review and disapproval of real and specific policy proposals.

When forced to consider the effectiveness of statutory guidelines in a vacuum, a court must necessarily feel that it is groping among generalities, whereas a review of the constitutionality of the delegation here can be better conducted in the context of an actual case involving, in this instance, specific policy provisions as well as specific regulations to show what is, or can be seen as, "unjust" or "unfair" or "unfairly discriminatory."

Certainly the expertise of the administrative agency is a factor which affects the propriety of a questioned standard (as well as a reason for the conferring of administrative rule-making powers); an actual case permits a demonstration of that expertise, as well as an indication of the complexity of the subject matter.

We therefore conclude that, under the Greentree doctrine, the present situation falls in the area in which the administrative process has distinct utility, and equity jurisdiction is not appropriate.[9]

Therefore, making it unnecessary to consider the other preliminary objections, we will sustain the preliminary objections based upon failure to pursue the available administrative remedy.

---

[9] In insurance matters, as a general rule, equity litigation would not provide a quicker resolution because we note that Section 354 of The Insurance Company Law, 40 P.S. §477 b, tends to force administrative promptness on the Commissioner by requiring the initial administrative disapproval to be issued within a maximum of sixty days, if it is to be effective, with a hearing to be afforded within a maximum of sixty days thereafter. Here, this petitioner could have embarked upon the administrative test of its then-existing policies as early as June of 1978.

#### ORDER

AND Now, this 8th day of May, 1980, the preliminary objections of respondents Insurance Department and Insurance Commissioner, Nos. 1, 2, 3 and 4, are sustained, and the petition is dismissed.