524 A.2d 1027

Bensalem Township School District, and Robert Dewey in his own right and on behalf of all other taxpayers of Bensalem Township, and Mark Jaskolka, a minor by Andrew Jaskolka, his parent and natural guardian, in his own right and on behalf of all other school aged children in Bensalem Township, Petitioners *v.* Commonwealth of Pennsylvania, and The Treasurer of Pennsylvania, and The Secretary of Education of The Commonwealth of Pennsylvania, Respondents.

Argued February 25, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*James M. McMaster, Smith and McMaster, P.C.,* for petitioners.

*Allen C. Warshaw,* Executive Deputy Attorney General, with him, *John G. Knorr, III,* Senior Deputy At-

torney General, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE MACPHAIL, April, 22, 1987:

Before this Court in our original jurisdiction[1] is a Motion for Summary Judgment filed by Bensalem Township School District, Robert Dewey (in his own right and on behalf of all other Bensalem Township taxpayers), and Mark Jaskolka, a minor by Andrew Jaskolka (in his own right and on behalf of all other school-aged children in Bensalem Township) (Petitioners) asking us to declare specific provisions of the Public School Code of 1949[2] (Code) unconstitutional. For the reasons set forth below, we deny Petitioners' motion and enter judgment for the Respondents.

On May 25, 1984, Petitioners filed with this Court a petition for review in the nature of an action for declaratory and equitable relief against the Commonwealth of Pennsylvania, the Treasurer of Pennsylvania, and the Secretary of Education of the Commonwealth of Pennsylvania (Respondents). Petitioners alleged that the statutory scheme for the funding of the Commonwealth's public schools, specifically Section 2502.5 and Section 2502.6 of the Code, 24 P.S. §§25-2502.5 and 25-2502.6, violates both on its face and as applied the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 1 and Section 26, and Article III, Section 14 of the Pennsylvania Constitution. In addition to seeking the declaration on constitutionality, Petitioners sought to enjoin the Secretary of Education and the Treasurer from distributing subsidies in accordance with Section 2502.6.

---

[1] Section 761 of the Judicial Code, 42 Pa. C. S. §761.

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§1-101—27-2702.

In their answer and new matter, Respondents argued that the petition for review failed to state a cause of action, that Petitioners lacked standing, and that the action was barred by laches and/or the applicable statute of limitations and sovereign and official immunity.[3]

Petitioners took no further action, and on October 17, 1985, this Court issued a rule upon them to show cause why their case should not be dismissed for want of prosecution. Petitioners were given until November 18, 1985 to respond. In their answer to the rule, Petitioners maintained that they had delayed action because of efforts to resolve the matter through legislative action and requested an additional six months to allow the General Assembly to act. Accordingly, on November 21, 1985, the rule was discharged, and Petitioners were directed to file a status report on or before May 19, 1986. The status report, ultimately filed July 11, 1986, stated that inasmuch as new legislation granted only partial relief, Petitioners would file a Motion for Summary Judgment. Such motion, filed October 13, 1986, is now before our Court.

The statutory scheme established by the Code for the funding of the Commonwealth's public schools provides for state subsidies to supplement local taxing efforts. The subsidies are determined for each school district by a complex formula which involves a consideration of student enrollment, district spending, and the

---

[3] Even though Respondents argue here that the *school district* lacks standing, neither the Petitioners' brief in support of, nor the Respondents' brief in opposition to, the motion for summary judgment addresses the procedural defenses raised in Respondents' new matter. We will, therefore, restrict our present decision to the merits of the constitutional challenge, regardless of whether the ultimate disposition of this matter would be barred by any of the asserted defenses.

district's relative wealth.[4] *See Danson v. Casey*, 33 Pa. Commonwealth Ct. 614, 382 A.2d 1238 (1978), *aff'd*, 484 Pa. 415, 399 A.2d 360 (1979). In this Court's opinion in *Danson,* we described the operation of the formula as follows:

> Districts receive a payment for each child enrolled in school. Secondary children are 'weighted' so that the weighted average daily membership (WADM) exceeds actual enrollment. The Commonwealth then undertakes to pay a percentage of the median actual instruction expense per WADM in the year for which reimbursement is to be payable. This 'aid ratio' is computed by dividing the market value of the district's real estate by WADM and comparing it to the State average tax base per student. If the district and State tax base are equal, the district receives fifty (50%) percent of student cost. If the district base is lower, support is higher; if the base is higher, support is lower.

33 Pa. Commonwealth Ct. at 622, 382 A.2d at 1242. Petitioners challenge certain adjustments that have been made to this method of calculating subsidies beginning in 1979.

In preparing the budget for the 1979-1980 school year, the legislature adopted Section 2502.6 of the Code, 24 P.S. §25-2502.6, providing that each school district would receive a proportionate reduction in its subsidy if the appropriation for a given school year was not sufficient to meet statewide entitlements. The "hold harmless" provision of this section, which is challenged by Petitioners, prescribes that even if a district's entitlement, derived from the statutory formula, decreases for a given school year, the district will receive at least as much as it did the previous year.

---

[4] *See* Section 2501 of the Code, 24 P.S. §25-2501.

In 1983, as a further adjustment to the subsidy calculation, the legislature amended what is now Section 2502.5 of the Code, 24 P.S. §25-2502.5. This section established an "artificial floor" and "artificial ceiling" provision whereby for the 1982-1983 school year, districts would be limited to a 9% increase over their previous year's subsidy and assured of at least a 2% increase. This provision has been up-dated since 1983 and currently provides for an increase "floor" of 2% and an increase "ceiling" of 7%. The legislature subsequently enacted a provision whereby no school district would receive less than 80% of its entitlement for the 1983-1984 and 1984-1985 school years, or less than 85% for the 1985-1986 school year. Section 2502.5(e), 24 P.S. §25-2502.5(e).

Petitioners maintain that these provisions, purporting to limit or guarantee a district's subsidy based on the subsidy it received the previous year, bear no rational relationship to any legitimate governmental purpose and are, therefore, unconstitutional.

Initially, we note that summary judgment may be entered only where the right is clear and free from doubt, that is when the moving party has established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Kane v. Hilton*, 78 Pa. Commonwealth Ct. 629, 468 A.2d 1160 (1983).

There is no doubt that we are free to presume that in enacting legislation, our legislature does not intend to violate either the United States Constitution or the Pennsylvania Constitution. Section 1922 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922. As our Supreme Court has stated:

> The strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act have been so often stated as

to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality.

*Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). *See also Cloonan v. Thornburgh,* 103 Pa. Commonwealth Ct. 1, 519 A.2d 1040 (1986).

The right to education is neither implicitly nor explicitly guaranteed by the United States Constitution and so is not a fundamental right thereunder. *Lisa H. v. State Board of Education,* 67 Pa. Commonwealth Ct. 350, 447 A.2d 669 (1982), *aff'd,* 502 Pa. 613, 467 A.2d 1127 (1983) (citing *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1 (1973)). Under the Pennsylvania Constitution, the General Assembly is charged with providing "for the maintenance and support of a thorough and efficient system of public education."[5] Pennsylvania courts, however, have refused to recognize in this mandate a fundamental right to education subject to strict judicial scrutiny. *See, e.g., Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979); *Teachers' Tenure Act Cases,* 329 Pa. 213, 197 A. 344 (1938). The proper question for our review, therefore, is whether the challenged legislative scheme meets the rational basis test, *i.e.,* whether it bears a *reasonable relation* to the provision of a thorough and efficient system of public education. *Danson; Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975).

In so reviewing the challenged portions of the Code's subsidy provisions, we must bear in mind that the "appropriation and distribution of the school subsidy is a peculiar prerogative of the legislature. . . ." *Newport*

---

[5] Pa. Const. art. III, §14.

*Township School District v. State Tax Equalization Board,* 366 Pa. 603, 607, 79 A.2d 641, 643 (1951). As our Supreme Court recognized in 1938, "[i]n considering laws relating to the public school system, courts will not inquire into the reason, wisdom, or expediency of the legislative policy with regard to education. . . ." *Teachers' Tenure Act Cases,* 329 Pa. at 224, 197 A. at 352.

Petitioners argue that the "artificial floor" and "artificial ceiling" provisions of Section 2502.5 are arbitrary and bear no rational relation to the goals of the state subsidy system. According to Petitioners, the practical effect of the provisions is that a district with a sharp decline in enrollment from the previous year would be guaranteed a 2% increase in its subsidy, even if its entitlement, based on the aid ratio formula, actually decreases. A district with a sudden increase in enrollment over the previous year would be limited to a 9% increase, even if its entitlement were much greater.[6] Petitioners recognize that it is not unreasonable for the legislature to attempt to protect districts from sudden decreases in subsidies, but maintain that it is irrational to guarantee increases to all districts regardless of actual entitlement.

Petitioners' argument that Respondents have failed to establish the reasonable basis of the artificial floor and ceiling and the hold harmless provisions ignores Petitioners' own burden of proving that the Code provi-

---

[6] Petitioners allege that their school district has received far less than their entitlement under the basic formula, because of the floor and ceiling provisions. It is asserted that the district was deprived of $2,324,342.00 for the 1983-1984 school year, and would be deprived of $2,699,381.00 for the 1984-1985 school year. Petition for Review, Paragraph 21. Petitioners' motion for summary judgment and brief do not provide more current or projected losses.

sions "clearly, palpably, and plainly" violate the Constitution. *Pennsylvania Liquor Control Board*. "The burden must remain upon the person challenging the constitutionality of the legislation to demonstrate that it does not have a rational basis. Should the reviewing court detect such a basis, from whatever source, the legislation must be upheld." *Id*. at 371, 485 A.2d at 735.

While we are not indifferent to the financial difficulties of individual school districts, we believe in this instance that the legislature has properly exercised its prerogative to appropriate and distribute the school subsidies. *Newport Township School District*. The artificial floor, as Petitioners concede, protects districts from sudden decreases in entitlements due, for example, to a sharp decline in enrollment from one year to the next. Further, as Respondents assert in their brief to this Court, the artificial ceiling provision is a reasonable way to protect available funds from theoretically unlimited entitlements and thereby ensures the adequate funding of the statewide public school system.[7] This concern for maintaining an equitable distribution of the Commonwealth's limited resources provides a rational basis for the challenged Code provisions.

The provisions, we conclude, bear a reasonable relation to the legislature's constitutional mandate to provide for a thorough and efficient public school system. As Petitioners have not proved that the Code's funding scheme "clearly, palpably, and plainly" violates the Constitution, we will uphold the challenged sections. We,

---

[7] Respondents also point to three Code sections which currently operate to ameliorate the effects of the ceiling—the provision whereby each district is assured of at least 85% of its entitlement, Section 2502.5(e), 24 P.S. §25.2502.5(e); a supplemental "poverty" and "density" subsidy in Section 2502.11, 24 P.S. §25.2502.11; and a supplemental subsidy for small school districts in Section 2502.13, 24 P.S. §25-2502.13.

accordingly, deny Petitioners' Motion for Summary Judgment.

In the interest of judicial economy, we feel obligated to proceed further in this matter to a consideration of whether summary judgment should be entered in favor of the non-moving parties, *i.e.* the Respondents. There is authority for us to do so where there is no genuine issue of fact to be resolved. *Allegheny County Port Authority v. Flaherty,* 6 Pa. Commonwealth Ct. 135, 293 A.2d 152 (1972). The rationale for such action is set forth in 2 Goodrich-Amram 2d §1035(b):6 at 439 (1976) as follows: "Why should the defendant be put to the time, burden, and expense of a trial at which he will be entitled to binding instructions, because there is no issue of fact and because the plaintiff as a matter of law cannot recover?"

In the instant case, Petitioners' right to recover is dependent solely upon a finding that Section 2502.5 and Section 2502.6 of the Code are unconstitutional, a conclusion we have declined to reach. Inasmuch as Petitioners cannot recover as a matter of law, we will enter judgment in favor of the Respondents.

### ORDER

Petitioners' Motion for Summary Judgment in the above-captioned proceeding is hereby denied and judgment is entered in favor of Respondents.