106 Pa. Commonwealth Ct. 72 (1987)
525 A.2d 829
Pennsylvania Independent Petroleum Producers, A Non-Profit Corporation, Petitioner
v.
Commonwealth of Pennsylvania, Department of Environmental Resources and Nicholas De Benedictis, Secretary of Environmental Resources of the Commonwealth of Pennsylvania, Respondents.
No. 1195 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued November 19, 1986.
May 11, 1987.
*73 Argued November 19, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.
*74 Thomas L. Cooper, with him, Alfred S. Pelaez, Gilardi, Cooper, & Gismondi, P.A., for petitioner.
Jerome T. Foerster, Deputy Attorney General, with him, Justina Wasicek, Assistant Counsel, Andrew S. Gordon, Chief Deputy Attorney General, for respondents.
OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 11, 1987:
The Pennsylvania Independent Petroleum Producers[1] (PIPP) filed a petition for review in the nature of an equitable action for declaratory judgment challenging the constitutionality of the 1984 Oil and Gas Act.[2] The Commonwealth filed preliminary objections, which were denied per curiam. Pennsylvania Independent Petroleum *75 Producers v. Department of Environmental Resources, 95 Pa. Commonwealth Ct. 51, 504 A.2d 420 (1986). PIPP has now filed a motion for summary judgment. We deny said motion.
The issuance of a declaratory judgment is a matter of judicial discretion which should only be exercised to illuminate an existing right, status or legal relation. Doe v. Johns-Manville Corp., 324 Pa. Superior Ct. 469, 471 A.2d 1252 (1984). An actual controversy must exist for declaratory relief to be appropriate. South Whitehall Township v. Department of Transportation, 82 Pa. Commonwealth Ct. 217, 475 A.2d 166 (1984).
Summary judgment may be entered only where the following standards are met:
1) the case must be clear and free from doubt; 2) the moving party must prove that there is no genuine issue of material fact to be tried and that it is entitled to judgment as a matter of law; and 3) the record must be viewed in the light most favorable to the non-moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.
Pennsylvania Public Utility Commission Bar Association v. Thornburgh, 62 Pa. Commonwealth Ct. 88, 93, 434 A.2d 1327, 1329 (1981), aff'd, 498 Pa. 589, 450 A.2d 613 (1982). A motion for summary judgment is appropriate in declaratory judgment proceedings. Id.
The Oil and Gas Act became effective on April 18, 1985. It replaced the Gas Operations Well-Drilling Petroleum and Coal Mining Act.[3] The purpose of the Oil and Gas Act is to permit the optimal development of *76 such resources in this Commonwealth consistent with the protection of the health, safety, environment and property of the citizenry.[4] At the time this case was argued before this Court, no enforcement actions had been initiated.
PIPP's petition to this Court contains thirteen counts challenging seven specific provisions of the Oil and Gas Act and, in the alternative, the entire Act itself. We will review the contested provisions seriatim.

Section 208

Water Pollution Presumption
Section 208(c)[5] creates a rebuttable presumption that a well operator is responsible for pollution of any water supply within 1,000 feet of a gas or oil well. Section 505(a)[6] states that a person who violates any provision of the Act is guilty of a summary offense, punishable by a fine not to exceed $300 and/or imprisonment up to ninety days. Willful violators of the Act are guilty of a misdemeanor with possible imprisonment of not more than one year. Section 505(b).[7]
PIPP contends that if the pollution presumption is applied in a criminal enforcement proceeding, it would impermissibly shift to a well operator the Commonwealth's burden to prove beyond a reasonable doubt all elements of a criminal violation. See Commonwealth v. McFarland, 252 Pa. Superior Ct. 523, 382 A.2d 465 (1977).
The Commonwealth counters that declaratory relief is inappropriate at this time because no criminal actions involving Section 208 have been initiated. Hence, no *77 actual controversy or threatened action exists. See Chester Upland School District v. Commonwealth, 90 Pa. Commonwealth Ct. 464, 495 A.2d 981 (1985). The Commonwealth also argues that Section 208 creates only a rebuttable presumption to a civil offense because the penalty imposed for pollution in subsection (a), i.e., restoration or replacement of the affected water supply, is the exclusive remedy for violations.
The criminal sanctions found in Section 505 are expressly applicable to violations of any provision of the Oil and Gas Act. However, the record fails to disclose any actual or threatened criminal prosecution for a Section 208 violation. The Commonwealth has conceded that the presumption would not be appropriate in criminal prosecutions and that it would have the burden to establish all elements of a criminal violation. Therefore, since we find any injury resulting from Section 506 sanctions to be speculative and remote, we decline to declare Section 208 unconstitutional.

Section 215

Bond Requirements
Section 215(a)[8] requires that as of the effective date of the Oil and Gas Act, a bond be filed with the Department of Environmental Resources (DER) upon the filing of an application for a well permit or before continued operation of any oil or gas well. The bonding amount per well is $2,500.[9] However, in lieu of individual bonds, an owner may post a blanket bond of $25,000. The bond is required to ensure compliance with all requirements of the Oil and Gas Act. The *78 amount reflects the costs which the Commonwealth would incur to plug an abandoned or illegally operated well.
PIPP contends that this section creates two separate classes  large well operators, i.e., owners of ten or more wells posting a blanket bond, and small well operators  and that it discriminates against the small operators, hence violating the Equal Protection Clause of the Fourteenth Amendment and Article I, §1 of the Pennsylvania Constitution.
Since there exists no allegations of a violation of "suspect" classifications or "fundamental" rights, in order for the legislative classification found in Section 215 to be upheld, it must be found to be reasonable, not arbitrary, and rest upon a difference having a fair and substantial relation to the object of the legislation. Snider v. Thornburgh, 496 Pa. 159, 436 A.2d 593 (1981).
We hold that Section 215 does not violate the equal protection clause. PIPP advances its argument by creating a hypothetical conglomerate entity which posts a blanket bond covering 1,000 wells, hence posting $25 bond per well. PIPP argues that this classification enhances the survival of larger oil corporations because smaller well operators are financially disadvantaged.[10]
The legislature, in creating the blanket amount, acted reasonably and in a non-discriminatory manner. As a safeguard to small operators, it enacted Section 215(d), which permits economically distressed operators to submit nonrefundable fees in the amount of $50 in place of $2,500 bonds. Moreover, Section 215(c)[11] states that the entire blanket bond may be forfeited for a violation at a single well site and that the entire bond would *79 have to be replaced within ten days. Such a sanction would injure large operators to the benefit of small operators. We conclude that the blanket bond provision treats all operators fairly and is consistent with the Act's avowed purposes.

Sections 210(e) and 215(c), (e)

Prehearing Seizure of Property and Bonds
Section 210(e)[12] authorizes DER to enter upon an unplugged and abandoned well, proceed to plug the well and sell any remaining equipment, casing and pipe to recover plugging costs. Section 215(c) permits DER to declare a bond forfeited upon noncompliance by a well operator with any provision of the Oil and Gas Act.
PIPP contends that by permitting both actions without any prior notice or hearing, these sections deprive well operators of due process of law, in violation of the Commonwealth and United States Constitutions. Specifically, PIPP argues, relying on Sniadach v. Family Finance Corp., 395 U.S. 337 (1969), that no emergency or exigency exists which would permit a preforfeiture or pre-seizure hearing.
The Commonwealth counters that (1) this challenge is premature since PIPP has made no assertion that the provisions have been unconstitutionally applied and (2) Section 1921-A of The Administrative Code of 1929 (Code),[13] which permits an aggrieved party to timely appeal such action to the Environmental Hearing Board (EHB), adequately protects PIPP's due process rights.
Again, this Court is troubled because we are compelled to operate in a vacuum and to speculate as to how these statutory guidelines will be implemented and enforced. See American Family Life Assurance Co. v. *80 Insurance Department, 51 Pa. Commonwealth Ct. 247, 414 A.2d 166 (1980). We note that in its statement of policy as to how bond forfeiture would be implemented prior to the issuance of regulations by the Environmental Quality Board (EQB),[14] DER stated that such action would be utilized only after all other remedies were exhausted and that the surety and owner would receive prior notice and opportunity to comply with any violations of the Act.[15] Moreover, consistent with the definition of "abandonment" in Section 103[16] of the Act and the notice requirements of abandonment found in Section 210 of the Act, DER will attempt to plug a well only after a well owner fails to apprise DER of on-site activity (i.e., a driller only need request "inactive" status, pursuant to Sections 210(a) and 103, thereby giving notice of nonabandonment).
While this Court is concerned about potential due process violations by DER's actions, a statute's constitutionality is presumed unless there appears a clear and palpable constitutional violation. U.S. Steel v. Workmen's Compensation Appeal Board (Mehalovich), 72 Pa. Commonwealth Ct. 481, 457 A.2d 155 (1983). We hold that Sections 210 and 215 do not effect a denial of due process.

Section 508

Material and Witness Production
This provision authorizes DER to make inspections, conduct tests or samplings, and/or examine books, papers and records pertinent to any ongoing investigation *81 commenced under the 1984 Oil and Gas Act. Section 508(b)[17] states:
(b) The owner, operator, or other person in charge of such property, facility, operation or activity, upon presentation of proper identification and purpose for inspection by the agents or employees of the department, shall give such agents and employees free and unrestricted entry and access and, upon refusal to grant such entry or access, the agent or employee may obtain a search warrant or other suitable order authorizing such entry and inspection. It shall be sufficient probable cause to issue a search warrant authorizing such examination and inspection if there is probable cause to believe that the object of the investigation is subject to regulation under this act and access, examination or inspection is necessary to enforce the provisions of this act.
PIPP argues that this provision permits warrantless searches, in violation of the Fourth Amendment to the United States Constitution, and that its definition of probable cause to obtain a warrant of entry is legally insufficient.
The Commonwealth disagrees with PIPP's interpretation of the provision and argues that the provision is a valid constitutional exercise of the Commonwealth's police power to enter and inspect regulated premises.
In Commonwealth v. Lutz, 512 Pa. 192, 516 A.2d 339 (1986), and Commonwealth v. Fiore, 512 Pa. 327, 516 A.2d 704 (1986), our Supreme Court recently discussed warrantless administrative searches as authorized in Section 608 of the Solid Waste Management Act.[18] In Fiore, warrantless searches of hazardous waste disposal sites were upheld.[19]
*82 Initially, this Court notes that the provision under review in the instant matter differs from the search provisions in Lutz and Fiore. Section 508(b) and (c) clearly recognize a well owner or operator's right to refuse entry to DER agents. In their briefs, PIPP and the Commonwealth propose hypothetical factual situations to support their respective positions on the validity or invalidity of the warrant requirement in Section 508(b). This Court is troubled by the lack of an actual controversy to rightly examine Section 508 and therefore we decline to enter judgment. The strong presumption of the constitutionality of a statute survives unless a party meets its heavy burden of showing that the statute "clearly, palpably and plainly" violates the Constitutions. Snider v. Thornburgh, 496 Pa. at 167, 436 A.2d at 596. This burden has not been met.

Section 212

Well Reporting Requirements
Well operators are required, pursuant to Section 212,[20] to file reports specifying the status and production level of each well. Additional records, logs, charts and data must be filed disclosing information on well depth and formation. Submitted reports and records are kept confidential by DER for a period of one year. Upon operator request, confidentiality is extended for an additional four years. DER is permitted to use the information submitted for enforcement proceedings.
PIPP argues that the information sought is not critical to effectuating the purposes of the Act and hence its *83 members' right to privacy is invaded. Additionally, PIPP argues that Section 508 violates the well operators' Fifth Amendment rights against self-incrimination.
The Commonwealth counters that the provision adequately addresses the business operator's privacy rights and that the reports and records are not of an incriminating nature.
We note that Section 212(b) provides that regulations be issued delineating the type of well records required to be submitted. Moreover, Section 212(c) requires DER to send notification to operators requesting specific pre-drilling information. The record reveals that neither of these two preconditions to record submissions has occurred. Therefore, in the absence of a sufficient description of well records which must be submitted, this Court will not adjudicate the violation of the constitutional rights PIPP claims are infringed.
Likewise, the reports containing well status and production levels, which on request can be kept confidential for a five-year period, do not, at this time, infringe upon operators' constitutional rights. Well status and production reports are essential to DER's authority and duty to police the Commonwealth's environmental resources. We decline to declare Section 212 unconstitutional.

Section 509

Unlawful Conduct
Section 509[21] states that it is unlawful for any person to drill, alter, operate or utilize an oil or gas well in violation of the rules or regulations adopted pursuant to the Act or orders issued by DER.
PIPP argues that the lack of statutory standards and/ or guidelines in the Act controlling the EQB's regulation-making *84 power constitutes an unlawful delegation of the legislature's power to determine what actions shall be criminal.
We hold that the standards in the Act are definite and reasonable and constitute a lawful delegation of legislative power. Bortz Coal Co. v. Commonwealth, 2 Pa. Commonwealth Ct. 441, 279 A.2d 388 (1971).
The EQB is granted the authority to adopt regulations to "implement the provisions" of the Act. Section 604.[22] The declared purpose of the Act is to protect (1) well operation personnel and facilities, (2) persons residing near well sites, (3) the Commonwealth's natural resources and (4) and permit the optimal development of oil and gas in the Commonwealth. Section 102 of the Act. We find that the provisions now found in the Act are consistent with the stated purposes and contain adequate standards to guide EQB in promulgating regulations.
It must be noted, however, that at this time we can consider only the delegation of authority, not the validity of non-promulgated regulations. We hold that Section 509 is constitutionally valid.

1984 Oil and Gas Act
Lastly, PIPP contends that the entire Act is unconstitutional because it deprives its members of due process of law by unlawfully commingling legislative, prosecutorial and judicial functions in DER.
Chapter 5 of the Oil and Gas Act, Sections 501-511, authorizes DER to enforce all of the provisions of the Act. As discussed previously, the EQB is authorized to adopt regulations to implement the provisions of the Act. Section 604. The EHB has the power and duty to *85 review any order, permit, license or decision issued by DER.
PIPP argues that since the EQB and the EHB are placed under DER in Section 202 of the Code,[23] impermissible commingling occurs. We disagree.
Our review of the statutory composition and authority of each of the three entities reveals that no commingling of legislative, executive and judicial authority exists. See East Pennsboro Township Authority v. Department of Environmental Resources, 18 Pa. Commonwealth Ct. 58, 334 A.2d 798 (1975). The EHB, composed of three gubernatorial appointees to serve six-year terms, is an independent board administratively placed in DER, Section 472 of the Code.[24] The EQB is a twenty-one member body, Section 471 of the Code,[25] which has the authority to promulgate rules and regulations for the proper performance of DER's duties, Section 1920-A of the Code,[26] and for the conduct of hearings before the EHB, Section 1921-A of the Code.[27]
The structure and composition clearly establishes specific and separate duties for each entity. In reviewing the controlling statutory authority, we find no commingling. The legislative reorganization in Section 202 of The Administrative Code of 1929, realigning the numerous commissions, agencies and boards into the listed departments was for administrative purposes and not for an intermingling of their duties. Again, reviewing PIPP's contention on record before us, we discern no overlapping functions or violations of constitutional rights by EHB, EQB and DER.

*86 Conclusion

The Court holds that the 1984 Oil and Gas Act is constitutional. Thus, petitioner's motion for summary judgment is denied.
Upon consideration of our reasoning in Pennsylvania Independent Petroleum Producers v. Department of Environmental Resources, 95 Pa. Commonwealth Ct. 51, 504 A.2d 420 (1986), and our holding in the matter sub judice, in the interest of judicial economy, we shall proceed further in this matter and consider whether summary judgment should be entered in favor of the respondents, the non-moving parties. Bensalem Township School District v. Commonwealth, 105 Pa. Commonwealth Ct. 388, 524 A.2d 1027 (1987).
In this action, PIPP is attempting to establish that the 1984 Oil and Gas Act is constitutionally infirm. After reviewing the evidence presented and arguments advanced herein, we have decided not to declare the 1984 Oil and Gas Act or any of its provisions unconstitutional. Hence, inasmuch as petitioner cannot recover as a matter of law, we will enter judgment in favor of the respondents.

ORDER
Upon consideration of petitioner's motion for summary judgment, respondents' answer thereto, and after argument, it is ordered that the motion for summary judgment is denied. Judgment is entered in favor of respondents.
Judge BARRY concurs in the result only.
NOTES
[1] PIPP is a non-profit organization whose membership consists primarily of small, independent oil producers who operate at a low level of capacity.
[2] Act of December 19, 1984, P.L. 1140, 58 P.S. §§601.101  601.605.
[3] Act of November 30, 1955, P.L. 756, as amended, formerly 52 P.S. §§2101  2602, repealed by Section 606(a) of the Act of December 19, 1984, P.L. 1140.
[4] Section 102 of the Oil and Gas Act, 58 P.S. §601.102.
[5] 58 P.S. §601.208(c).
[6] 58 P.S. §601.505(a).
[7] 58 P.S. §601.505(b).
[8] 58 P.S. §601.215(a).
[9] The Environmental Quality Board has the authority to adjust the bonding amount every two years to reflect the projected costs to the Commonwealth of performing well-plugging.
[10] There is record evidence that some companies do operate over 1,000 wells in this Commonwealth.
[11] 58 P.S. §601.215(c).
[12] 58 P.S. §601.210(e).
[13] Act of April 9, 1929, P.L. 177, as amended, 71 P.S. §510-21.
[14] Section 604, 58 P.S. §601.604.
[15] This statement is made part of the record pursuant to the Commonwealth's response to request for production of documents.
[16] 58 P.S. §601.103.
[17] 58 P.S. §601.508(b).
[18] Act of July 7, 1980, P.L. 380, 35 P.S. §6018.608.
[19] It should be noted that on March 24, 1987, the United States Supreme Court vacated the judgment in Lutz and remanded for further consideration in light of the Supreme Court's recent decision in United States v. Dunn, 94 L.Ed. 2d 326 (1987) (No. 85998, filed March 3, 1987). For our purposes, we do not believe that the aspects of the analysis in Fiore and Lutz, which we rely upon herein, have been affected by the United States Supreme Court order.
[20] 58 P.S. §601.212.
[21] 58 P.S. §601.509.
[22] 58 P.S. §601.604.
[23] 71 P.S. §62.
[24] 71 P.S. §180-2.
[25] 71 P.S. §180-1.
[26] 71 P.S. §510-20.
[27] 71 P.S. §510-21.